LANDRY, Judge ad hoc.
• By means of this appeal, plaintiff-appellant Margaret Burke McCarthy seeks reversal of the judgment of .the trial court rejecting her demand for damages for the death of her husband, John A. McCarthy, who was killed when struck by a southbound automobile driven by defendant Wayne M. Blair as said decedent was.crossing a public highway within the municipal limits of the Town of Slidell, Louisiana, after having alighted from a northbound Greyhound bus on which he had been riding as a fare-paying passenger.
The suit initially joined as defendants Wayne M. Blair, driver of the automobile involved in the accident, Selected Risks Insurance Company, Blair’s liability insurer and The Greyhound Corporation, owner of the bus on which decedent McCarthy was riding immediately preceding the accident.
In the lower court judgment was rendered 'against plaintiff rejecting her demands against all defendants.' Esteemed counsél for'plaintiff now concedes an absence of liability on the ‘ part of defendant, The '-Greyhound Corporation.
- The sole issue presented by this appeal is whether or not defendant Blair and his insurer.are liable,for the death of said defendant under the last clear chance doctrine.
At the time o-f the accident, 5:00 P. M., February 12, 1958, a light snow was falling in the usually sunny south but visibility was good. Defendant Blair was traveling southerly along Highway 11 within the corporate limits of the Town of Slidell, which said highway, at the scene of the accidentáis a two lane highway consisting of a black topped surface 24 feet 'in width with rather wide shoulders on either side thereof. dAs Blair proceeded along the highway in the right southbound lane he approached a northbound Greyhound bus parked, on the east shoulder of the road completely off the paved portion of the highway near a service station, for the purpose of discharging decedent John A. McCarthy at said decedent's request. As McCarthy alighted from the bus the driver thereof started the bus in motion to regain the highway and McCarthy simultaneously commenced walking toward the rear of the ■bus. After clearing the rear of the bus, McCarthy commenced to walk across the highway and in doing so walked into the side of the Blair automobile, the point of impact being in the right southbound lane near the center of the roadway.
In his written reasons for judgment the learned trial court held that Blair was free of negligence and found the proximate .cause of the accident to be the negligence of decedent McCarthy in failing to exercise ‘caution in crossing the highway. The trial court further held that the last clear chance doctrine did not apply because defendant Blair did not have the last clear chance to avoid the accident. He further held that Blair'was confronted with a sudden emergency and, in fact, had no opportunity whatsoever to avert the tragedy which occurred.
’ Learned Counsel for appellent, in oral argument before this court, contends' the *839 trial court -erred in two respects '(1) In; holding the doctrine of last clear chance inapplicable because plaintiff had failed to specially plead the issue and (2) In not holding that defendant Blair did in fact have the last clear chance to prevent the, death of decedent McCarthy.
We have carefully .read the written reasons for judgment filed by the trial judge and find that appellant’s first contention is without foundation in the .record. We' interpret the ruling of the trial court as holding the doctrine of last clear chance inapplicable under the facts rather than on th.e basis of faulty pleading. Had our brother below ruled as counsel argues he would indeed have fallen into error for it is now the settled jurisprudence of this state that the principle of last clear chance does not have to be specially pleaded to be available to a litigant. The rule, though not advanced in the pleadings, may be invoked by the courts when its application is justified by the evidence of record. Lemaire v. Pellerin, La.App., 102 So.2d 493, 494.
The evidence is not in serious dispute. Three persons witnessed the unfortunate event, namely, defendant Blair, -driver of the automobile involved in the incident and Mr. and Mrs. Harry Gaines who were following the bus in the' Gaines car being driven by Mi;. Gaines ■ who brought the vehicle to a halt approximately 100 feet behind the bus when the bus stopped to discharge decedent McCarthy.
Defendant Blair testified that before observing the parked bus he was traveling at a speed estimated to be between 25 and 30 miles per hour; it is conceded by all parties that a maximum legal speed of 30 miles per hour was in effect at the time and place of the fateful event. Traveling with his headlights on dim, he first observed the bus parked on the shoulder of the highway to his left when he was an estimated distance of 100 feet of more away. He immediately eased the pressure of his foot on the accelerator and reduced the .speed of his vehicle to approximately 15 or 20 miles, per hour and continued along in his proper¡ lane of travel. As he approached the bus in the .manner indicated, the bus began to rpove slowly forward to regain the traveled,’ portion of the highway. When he reached a point mid-way the bus he then for the first time observed decedent about 5 to 10, feet behind the bus walking across the highway looking to the south (the direction opposite to that from which defendant was approaching). At the time Blair noted the presence .of decedent upon the highway, decedent was almost in the center of the highway approximately 15 feet from the front end of Blair’s automobile. ■ Blair stated that he immediately attempted to-’ apply his brakes but, before he could transfer his foot from the accelerator to the brake pedal, decedent took an additional step and walked into the side of the car coming'in contact with the windshield and' door thereof. After ■ bringing his car to a stop in the right southbound lane one or two car lengths south of the point of impact, Blair went to the aid of' decedent* and subsequently moved his vehicle completely off the highway pursuant to a spectator’s suggestion that it be removed from the roadway to avoid creating a traffic hazard.
Mrs. Gaines testified she and her husband were following the bus at a distance of approximately 200 feet and when the bus stopped Mr. Gaines reduced the speed of his car and stopped an estimated 100 feet behind the bus.- She observed decedent alight from the bus, walk to the rear thereof and start across the highway. She stated unequivocally that as decedent was crossing the road he was looking to the south toward the car in which she was seated and that he did not look in the direction of the on-coming Blair automobile. Of considerable significance is her uncontrpverted statement that .from her position she could not see the Blair, .automobile until just before the impact because the bus blocked her view. She also testified she saw the Blair car swerve to its right just, as McCar *840 thy into it, but it was too late. She corroborated Blair’s testimony in that she stated Blair stopped his vehicle in its proper lane a short distance south of the point of impact and later moved the car to a position completely off the highway. Mrs. Gaines further testified the impact occurred in the right southbound lane near the center line of the road and that at the time decedent was neither running nor walking but proceeding at a rate which she considered “a good pace”. She was unable to estimate the speed of the Blair automobile.
Mr. Gaines’ testimony is to the effect he was following along behind the bus at a distance of about 200 feet and, upon noting the signalled intention of the driver to stop, reduced his speed and brought his car to a virtual halt about 100 feet behind the bus. As decedent alighted from the bus the bus driver started the bus forward and decedent commenced walking toward the rear thereof. He saw decedent crossing the road looking toward the south and remarked to Mrs. Gaines that the decedent was going to walk into the side of Blair’s on-coming vehicle and as far as the witness could tell that is exactly what occurred. He also testified that Blair did not cross the center line of the highway and he estimated the speed of the Blair automobile at 25 miles per hour.
The negligence of decedent McCarthy is conceded by counsel for plaintiff who likewise acknowledges that plaintiff’s only hope of recovery herein is under the last clear chance doctrine.
No citation of authority is needed in support of the principle that under the last clear chance doctrine each case must be decided in the light of its own peculiar facts and circumstances. Similarly, it is elementary that whether or not liability attaches under the rule is purely a question of fact which likewise must be determined after consideration of the circumstances surrounding each individual case. Moreover, for the principle of last clear chance to be invoked it must appear from the evidence that the defendant sought to be held responsible did in fact have an opportunity to avert the injury complained of. Bailey v. Reggie, La.App., 22 So.2d 698 and cases therein cited.
Under the rule, as evolved by the jurisprudence of this state, if defendant discovers the perilous position of a negligent plaintiff in time to avoid the injury and fails to do so, defendant will be held liable on the theory the negligence of plaintiff, under such circumstances, is the remote rather than the proximate cause of the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153. An extension of the doctrine of last clear chance was established in Jackson v. Cook, 189 La. 860, 181 So. 195, wherein it was held that notwithstanding defendant’s failure to actually discover an endangered plaintiff in time to avoid the injury, defendant was nevertheless liable if, by the exercise of reasonable care and caution, he could have discovered the perilous plight of plaintiff in time to avoid the accident.
Illustrous counsel for plaintiff vigorously contends Blair was guilty of negligence in traveling at an excessive rate of speed, failing to maintain a proper lookout and failing to exercise proper caution in passing a stopped public conveyance in the act of discharging a passenger. Esteemed counsel places considerable reliance upon the line of jurisprudence fixing the degree of care incumbent upon motorists passing busses, street cars and trolleys parked on or near a public thoroughfare for the purpose of receiving and discharging passengers. We agree with distinguished counsel that the rule in this state is settled to the effect a motorist must take care not to injure pedestrians after their discharge from public conveyances and that upon seeing such stationary vehicles on or near a street or highway a driver of a vehicle should anticipate the discharge of passengers therefrom.
*841 A careful reading of the evidence convinces us plaintiff has failed to prove her allegation of excessive speed on the part of defendant Blair. On the contrary, after careful perusal of the testimony, we find Blair’s speed was safe and reasonable under the prevailing circumstances. Certain photographs introduced in evidence show that the area in which the accident occurred, although within the corporate limits of a municipality, was not congested and the testimony indicates traffic was not heavy at the time. Blair observed the bus parked completely off the highway and did not see any one standing near it. There was nothing to indicate to Blair a need for caution other than perhaps a reduction in the speed of his vehicle which was then traveling within the legal limit. The bus was not a school bus and under the law Blair was certainly not required to stop. Yet, despite the fact he saw no pedestrians near the bus, out of an abundance of precaution he did slow the speed of his car which, under the circumstances, was all he was required to do. Moreover, it is an uncontradicted fact that following the impact Blair brought his vehicle to a halt in a very short distance. Counsel for plaintiff argues most forcibly that the fact the record shows decedent’s feet were knocked into the air by the force of the impact and decedent was instantly killed is ample proof of Blair’s excessive speed. The conclusion urged upon us by distinguished counsel does not necessarily follow from the facts upon which it must rest. It is entirely possible and indeed probable that a modern motor car traveling at a speed of 15 to 20 miles per hour will hurl into the air and instantly kill a pedestrian walking into the side thereof.
Considering next the alleged failure to Blair to have his automobile under proper control we find that following the impact said defendant brought his vehicle to a stop in its proper lane of travel within one or two car lengths of the point of impact. In our considered opinion, such circumstances do not indicate a lack of control on the part of the operator but rather that the motorist did in fact have complete control of his vehicle at the time.
The serious issue in this case is whether defendant Blair could or should have seen McCarthy in time to avoid the accident. Counsel for appellant has' cited numerous cases involving somewhat analogous circumstances which he maintains are adequate precedent for our holding that under the circumstances of the case at bar Blair should have seen decedent in time to avoid the accident and his failure to do so renders him liable herein under the doctrine of last clear chance.
A reading of the cases cited by counsel discloses all are clearly distinguishable from the case at bar. While we do not consider it necessary to distinguish every case cited we will undertake to differentiate the cases upon which plaintiff apparently places principal reliance.
L’Urbaine Et La Seine v. Rodriguez, 5 Cir., 268 F.2d 1, involved injury to a 15 year old girl struck by a truck as she was attempting to cross the highway after having been discharged from a bus. In holding the truck driver liable the court found he had actually seen the girl when at least 100 or 200 and perhaps 300 or 400 feet distant. In the case at bar the evidence shows Blair did not see decedent until he was not more than 15 feet distant.
In Mire v. Lafourche Parish School Board, La.App., 62 So.2d 541, a 7 year old child was injured following her discharge from a school bus stopped beside the road with several other vehicles stopped behind it, the child being struck by defendant’s automobile attempting to pass the stationary vehicles and school bus. There is no similarity whatsoever between the Mire case and the case presently under consideration.
Lewis v. Goodman, La.App., 92 So.2d 723, is actually adverse to plaintiff’s interest inasmuch as a motorist was therein held *842 blameless for injuries to a 7 year, old child struck -by the motorist- overtaking and passing a bus from which the child had been discharged,- the accident occurring when the- child stepped from in front of the bus into the path of the overtaking vehicle. In the Lewis case, supra, the court held that the bus in question' not being a school bus there was no obligation on the part of the motorist to stop, and, since the child was screened from the view of the overtaking motorist by the bus there was no negligence on the part of the driver involved.
The doctrine of clear chance is unavailable to plaintiff herein for the reason defendant. Blair did not and, under the circumstances shown, could not have discovered the presence, of decedent McCarthy upon the highway in time to avoid the accident. As did the learned trial judge, we believe it was virtually impossible for Blair to have seen decedent sooner because decedent was concealed and shielded from view by the bus (which the record shows was 44 feet in length). The testimony of the bus driver (who did not see the accident) is to the effect he pulled back onto the highway gradually as the bus moved forward, therefore, as the bus approached the on-coming Blair automobile it came ever closer to Blair’s side of the road until it completely regained the highway. It will also be recalled Mrs. Gaines, seated in her car 100 feet behind the bus (from which it follows her position .was in the vicinity of the eastern edge of the paved portion of the highway), testified she could not see the Blair automobile until immediately before the impact. If she could not see an object as large as an automobile in the opposite lane of travel because its view was obstructed by the presence of the bus, it is not reasonable to demand that Blair should have seen an individual in the opposite lane of travel only a few feet behind the bus. Just as Mrs. Gaines’ view of Blair’s car was obstructed so was Blair’s view’ of decedent, even more so- considering decedent was merely a few feet behind the buá and Mrs. Gaines was 100 feet distant therefrom.
We are of the opinion Blair was not negligent in having failed to see decedent McCarthy sooner and that the doctrine of last clear chance is inapplicable herein because Blair did not, in fact, have an opportunity to avoid the accident. Bailey v. Reggie, La.App., 22 So.2d 698.
It follows the judgment óf the trial court was proper in every respect and must be affirmed at appellant’s -cost.
Affirmed.