JONES, Judge.
This is an action in tort in which the plaintiffs, who are husband and wife, seek the recovery of damages for the death of their minor son, 18 years of age, who was killed while crossing a highway in the Parish of East Feliciana. Defendant is the liability insurer of the driver of the automobile that struck the youth resulting in his death. The District Court made an award of $4,500 in favor of the plaintiff wife, Louisa Knighten, but made no award in favor of Hence Knighten, the other plaintiff, apparently on the ground that he was “non compus menis” as stated by counsel for plaintiff (tr. 73). From this judgment the defendant insurance company has appealed.
On the night of March 12, 1960, the plaintiff, Louisa Knighten, left her home in a car driven by one James Wesley in search of her son, Leroy Knighten. She was successful in locating him at the Briar-patch Club in Clinton, Louisiana, and, ascertaining that he was drinking, she prevailed on him to get into the car for the purpose of taking him home. The boy was riding in the front seat with Wesley driving and the mother sitting on the back seat. They proceeded north on State Highway 67 and when they reached a point approximately two miles north of the town of Clinton, the boy had become so rambunctious, as explained by Louisa, that it was necessary for the driver to bring the car to a stop. When he did so, Leroy jumped from the car and began running back south toward Clinton. At the same time, defendant’s insured, Donnellan, was proceeding on the highway in his car (with his wife and five children asleep therein) south toward Clinton, and when he reached a point 72 feet south of the car that was parked by Wesley, his car struck the Knighten youth killing him. The time of the happening of the accident was approximately 11:15 p. m. and the weather was clear; it is further shown that the deceased, who was colored, was wearing dark clothes. In finding the defendant’s insured guilty of negligence, the District Judge stated as follows (tr. 76):
“There is one thing I have been impressed with throughout the trial of this case. This car here (indicating on the board) struck the man right in the middle of the right headlight. The right headlight was virtually the only thing damaged about that car. Now, assuming that the man was crossing the highway or walking down the highway, Mr. Donnellan says that he did not see that man until he was right on him, and then he swerved to miss him. There is no doubt in my mind that if he swerved to miss him, that hitting him with his right front fender, or where his right front headlight is, that he just could have swerved further; he could have gone around him like that (indicating). This man here, except his testimony in writing, Mr. Donnellan’s testimony is correct, if the man was in the middle of the lane. Had he been in the middle of the lane, he swerved, but he just didn’t swerve far enough. The road was completely open, he had passed this car parked on the shoulder, and there is nothing in the Law that holds that because a car is parked, you are not to see beyond that car. You are supposed to be able to see beyond that car if it is facing you, or else you are negligent.”
Thus, it is apparent that the District Judge found the defendant’s insured had the last clear chance to avoid the accident.
There is some conflict in the testimony as to just what course Leroy Knighten pursued when he got out of the Wesley car and started back toward Clinton. In her testimony on direct examination, the plaintiff, Louisa Knighten, stated that her son was going pretty fast, not exactly running, *53 and at another point (tr. 49) that he was running. Further, even though she had previously testified that he had gone •diagonally across the road, she stated (tr. 48 and 49) that he got out on the right-hand side of the Wesley car parked on the east side of the road, walked down the shoulder of the road behind the car and when he got some distance from the automobile he walked “kind of cat-a-cornered, it seemed like” across the road.
The testimony of defendant’s insured, Donnellan, is to the effect that when he ■came over the crest of a hill some 900 feet from the scene of the accident, he saw the lights of a car facing him; that he was traveling at a rate of speed of 60 miles per hour; that he dimmed his lights; and that he did not see the youth moving out of the dark from the left side of the road until he was passing the parked car belonging to Wesley, and the distance was so close he didn’t have time to swerve to his left out of the youth’s path of travel. Donnellan testified the boy was running directly across the road when he observed him.
The testimony of Mr. Alvin Doyle, expert called by the plaintiff, was to the effect that the point of impact was 72 feet south of the parked automobile. He ascertained this by glass found on the road 3 feet from the west side which apparently came from the right front glass of the headlights of the insured’s car. There was no evidence of any skidmarks.
Thus, it is necessary to determine if this defendant’s insured was negligent in failing to avoid striking the youth when he was traveling at a lawful rate of speed on a highway in open country when said youth crossed the road directly in the path of his travel. There can be no question but that Leroy Knighten was guilty of negligence but, irrespective of said negligence, the defendant is liable if its insured discovered the perilous position of the youth in time to avoid the accident and failed to do so. Rottman v. Beverly, 183 La. 947, 165 So. 153. It is further the law that the failure of defendant’s insured to discover the deceased in time to avoid the accident will not excuse him if by the exercise of reasonable care he could have discovered the perilous position of the deceased. Jackson v. Cook, 189 La. 860, 181 So. 195; McCarthy v. Blair, La.App., 122 So.2d 837, 839.
We are of the opinion that the car which was parked by John Wesley on the east side of the road just 72 feet north of where this accident happened had a great deal to do with the failure of the defendant’s insured to sooner become cognizant of the perilous position in which Leroy Knighten had placed himself. It is a matter of common knowledge that the vision of a person passing a car at night with its headlights facing him is impaired to the extent that it is practically impossible for him to see a dark, unlighted object beyond the lights of said car. When it is considered that this boy got out of the car and, according to the testimony of his mother, went south on the shoulder of the east side of the road for a considerable distance, then he was certainly not in the view of the oncoming driver for any length of time because the parked car obstructed his view even assuming that he could see beyond the lights. However, the boy was colored and the testimony shows that he was wearing dark clothes and Donnellan, the driver, was sure that he ran directly from the east to the west side of the road into his path. Since Donnellan’s car was traveling 60 miles per hour, he was moving at a rate of speed of 88 feet per second. It requires three-fourths of a second for the average person to react to an emergency. Thus, assuming that Mr. Donnellan was an average person, there was not sufficient time for him to even apply the brakes before he struck the deceased.
We consider it appropriate to point out that much argument by counsel for the plaintiff is devoted to the fact that Wesley’s car was parked completely on the shoulder of the east side of the highway *54 rather than any part of said car being on the hard surfaced road. The testimony shows that the shoulder where the car was parked was only 6 feet wide with a ditch to the east thereof and the car had to be right at the edge of the hard surfaced road. Thus, whether the car was parked on the blacktop or the shoulder is of no moment for in either location the lights therefrom would just as effectively have impaired the vision of the driver of the oncoming car.
We have read very carefully the testimony of the expert, Mr. Doyle, a great deal of which was based on hearsay, and note he states that it was possible, due to the road being straight, for a person to see down that road for a distance of 900 feet. This is probably true in the day time but certainly the driver could not see any such distance by an illumination of his 'lights with another car facing him. It is further testified by Mr. Doyle that a person with normal reflexes could stop a car proceeding at a rate of speed of 60 miles per hour within a distance of 250 feet. We agree with these calculations but we certainly do not think that, under the circumstances, with carlights facing him, the driver could have seen a dark object beyond that light for a distance of 250 feet.
Counsel for plaintiffs-appellees argues in brief that a motorist owes a greater duty to an intoxicated person. This is subject to two conditions, however; that the motorist had knowledge or was chargeable with knowledge of the intoxicated condition of the person, and proof of said intoxication. There is no proof in this record of either knowledge on the part of the motorist or is there proof in the record that the deceased was intoxicated prior to the collision. All that the evidence shows is that he was drinking prior to the time of the accident.
For the reasons stated, we are of tíre opinion that the defendant’s insured was not negligent in failing to see this youth sooner and the doctrine of last clear chance is not applicable for defendant’s insured was acting with reasonable care and could not avoid the accident.
We note that the District Court allowed an expert witness fee to Mr. Doyle of $150 which we consider to be exorbitant in view of the fact that the transcript .reveals that his testimony was not lengthy. We accordingly reduce this item to $100.
For the reasons given, the judgment of the District Court will be reversed and the plaintiffs’ suit dismissed at their cost.
Reversed.