136 So.2d 831 (1962)
Haakon WAAGEN
v.
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY et al.
No. 206.
Court of Appeal of Louisiana, Fourth Circuit.
January 2, 1962.
Rehearing Denied February 5, 1962.
*832 Gilbert Bernstein and George W. Gill, Jr., New Orleans, for plaintiff and appellee.
Adams & Reese and Richard C. Baldwin, New Orleans, for defendants and appellants.
Before McBRIDE, YARRUT and JOHNSON, JJ.
McBRIDE, Judge.
Defendants took this appeal from a judgment rendered against them for $9,504.25 in plaintiff's suit for damages for personal injuries arising out of an accident which occurred in a drizzling rain in the darkness of early evening on December 26, 1954, on Magazine Street near its intersection with Thalia Street, wherein plaintiff, a pedestrian, was run into by an automobile driven by one of the defendants and insured as against liability by the other defendant. Plaintiff relies for recovery on the doctrine of the last clear chance; defendants deny negligence and, in the alternative, plead that plaintiff was guilty of contributory negligence.
The facts are that plaintiff, then 26 years old, attempted a foot crossing from the river side of Magazine Street to the lake side thereof at a point about 12 feet from the uptown edge of Thalia Street; Mazazine is a paved one-way street accommodating traffic traveling in an uptown direction and is 40 feet wide; when plaintiff reached a point beyond the center of the street, say about 26 feet from the river sidewalk of Magazine Street, he was struck by a Buick automobile moving in an uptown direction at a rate of speed of about 20 to 25 miles per hour in the extreme right-hand lane, i. e., the lane nearest the lake side of Magazine Street. The locus in quo was adequately lighted; the street lights were illuminated as were the sealed *833 beam headlights on the automobile which were in good working order. The car was operated by defendant Bowes and seated beside him was his wife, and in the rear seat were four of their young children. Mr. Bowes admitted he did not see plaintiff until the latter had reached at least the middle of the street or perhaps a few feet nearer the lake side, and that plaintiff seemed to "come out of nowhere." Plaintiff was then from 20 to 30 feet removed from the automobile, and Mr. Bowes applied his brakes and swerved to the right but without effect, as the left front fender of the car, at a point between the windshield and the headlight, came into contact with plaintiff who was thrown a considerable distance as a result of the impact. Mr. Bowes could account for nothing that could have obstructed his view of plaintiff, and when interrogated as to the reason for his not having sighted plaintiff in the roadway sooner, he, with the most admirable frankness, stated that his attention had been diverted some time prior to the accident by his children who were quarreling in the back seat of the car, and that he turned his head to reprimand them. He did not know exactly when his attention was so diverted, but states it may have been a block or so before the point of the accident or could have been just prior thereto.
In finding the defendants liable, the judge in his reasons for judgment stated:
"* * * There is no doubt that the plaintiff, in crossing the street, had attained the middle of the street and was not seen by the defendant until it was too late to avoid the accident.
* * * * * *
"In the opinion of this Court, the duty was upon the defendant to have been paying strict attention, and to have avoided hitting the pedestrian who was in a place of peril."
This case is controlled by Rottman v. Beverly, 183 La. 947, 165 So. 153, and Jackson v. Cook, 189 La. 860, 181 So. 195, 197, decided by the Supreme Court, out of which evolved certain legal principles which we think determinative here, thus: Those who operate engines or motor vehicles must at all times keep and maintain a sharp and vigilant lookout ahead so as to discover the presence of persons who might be in danger and avoid injuring them if they can. Where a motorist actually discovers a pedestrian's danger, even though it results from his own negligence, the motorist has the duty to save him from the consequences of such negligence if possible. The fact that the operator of the car does not see the pedestrian who could have been seen will not absolve such driver from liability, because it was his duty to look ahead and to see.
In the Rottman case the pedestrian was guilty of gross negligence which continued up to the moment of the accident and the motorist saw her in the perilous position in ample time to avert the accident had he used proper precautions. In Jackson v. Cook the pedestrian was guilty of gross negligence which continued up to the moment of the accident, but the driver of the automobile (as in the instant case) did not see but could have seen plaintiff in his peril if he had been looking ahead.
In Jackson v. Cook the Court said:
"* * * the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability.

* * * * * *
"* * * when a defendant sees another in peril of which the other is not aware, then a second or subsequent duty arises and devolves upon the defendant, which duty is to use every possible available means to avert injury. *834 We said * * * (in Rottman v. Beverly):
"If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff's negligence continues up to the accident.'

* * * * * *
"* * * The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. * * *"
Counsel for defendants attempt to distinguish the case at bar from the two cited cases and argue that the instant plaintiff was not "unaware" of his perilous movements as were the plaintiffs in the cited cases, in that he stepped from a place of safety on the sidewalk into the street knowing of the approaching Bowes car and kept his eyes focused thereon up to the very moment he was run into. Counsel say such negligence was continuing up to the accident and never became passive. They also contend that the plaintiff himself had the last clear chance to avoid being struck but did nothing to save himself.
It cannot be gainsaid that plaintiff was guilty of the grossest kind of negligence in attempting to traverse the street in the face of oncoming traffic, but we do not believe he fully realized his dangerous position until the Bowes automobile had reached a point about 50 feet away from him. Then thoroughly frightened, he stopped, turned, and faced in the direction of the oncoming car. Plaintiff admits having seen the Bowes car 150 feet away when he entered the roadway but by the time he had walked to the middle of the street, the car was almost upon him. The reason why he stopped walking and faced the automobile is fully explained by plaintiff: "I thought Mr. Bowes had seen me, because he had a good chance to stop, slow down and let me pass, but he was run straight into me."
And in answer to the second contention that plaintiff instead of stopping and facing the Bowes car could and should have removed himself from its path, we quote plaintiff again:
"Well, I came out to about the middle of the blockI mean the street, and I could recognize that was Mr. Bowes was a little close to me, so I stopped because I was scared to go back again, because then I was scared to run into that taxicab who was coming behind, so I just was stopped there and I was hit."
The taxicab plaintiff referred to was traveling to the left of the Bowes car and slightly to its rear, and it was this circumstance that prompted plaintiff to stand still rather than reverse his course by stepping backward into what he thought would be the path of the taxicab. As it turned out, however, the cab made a left turn on Thalia Street, but, of course, plaintiff had no reason to anticipate such a maneuver would transpire.
We perceive no error in the finding of the trial judge that Mr. Bowes was negligent in that he possessed the last clear chance of avoiding plaintiff but failed to exercise it, thus rendering defendants liable for plaintiff's damages arising from the accident.
Defendants in answer first tendered the defense they had entered into a transaction of compromise with plaintiff under, which defendant insurer gave him its draft for $250, in consideration of which it took from plaintiff a full release of all his claims against defendants. Plaintiff never cashed the draft and it was returned by his attorney to the insurer. The trial judge set aside the release, holding it to be null and void. *835 Such defense has not been raised before us; however, we have examined the record with reference thereto. Plaintiff was a Norwegian seaman and spoke but little English and then not too clearly. The release was obtained just three days after the accident while he was confined in the hospital. There is no question he was in great pain at the time and had a fever. The full extent of the injuries he sustained were not yet known. In view of the circumstances surrounding the transaction, especially the gross inadequacy of the amount paid plaintiff, the release he issued is of no effect and can avail defendants nothing. Davenport v. F. B. Dubach Lumber Co., 112 La. 943, 36 So. 812; Johnson v. National Casualty Co., La.App., 176 So. 235.
Plaintiff-appellee has answered the appeal praying that the amount of the judgment be increased to $41,004.25. The judgment is for $9,504.25, of which $1,074.25 is reimbursement for medical expenses plaintiff expended and $1,680 represents the loss of earnings during the one-year period of his disablement. The sum of $750 was allowed for the cost of an operation which is necessary to, and is hoped will, correct the condition of plaintiff's right knee. For pain and suffering the allowance was $6,000.
Plaintiff was admitted to the U. S. Public Health Service Hospital on the day of the accident and was there confined to February 23, 1955, or a total of 59 days. Thereafter he was an outpatient for almost the remainder of the year 1955. His injuries consisted of a closed comminuted fracture of the right tibia and a closed fracture of the right fibula; three Steinman pins were inserted in his leg, two at the fracture site and one below. Pins were also inserted in the more distal part of the tibia. Dr. Samuel A. Romano, general surgeon, testified that when he examined plaintiff on December 19, 1955, the right ankle was still swollen and there was a deformity in the right leg at about the junction of the middle and lower thirds. This medical expert further testified that at the time of the examination plaintiff complained of swelling in the ankle, stiffness of his right knee, and weakness of the right lower extremity. Dr. Romano estimated plaintiff's disability at about 30 percent of the right leg.
Dr. Romano again saw and examined plaintiff on April 22,1960, when the plaintiff was complaining of inability to work because of the difficulty in his right leg caused by swelling and pain which sometimes persisted as long as eight hours. The witness stated there was a definite loss of strength in the right quadriceps mechanism with limitation of the motion of the right ankle, and he thought the disability in the lower leg amounted to 25 percent.
Dr. Rufus H. Alldredge, orthopedic surgeon, appearing as a witness on behalf of defendants, testified that there was probably an injury of the medial meniscus of the right knee with recurring displacement of the meniscus, for which condition he recommended surgery, the cost of which he estimated to be about $750. According to Dr. Alldredge, the plaintiff could be considered in good physical condition except for the knee condition.
The record shows that plaintiff has been working as a commercial fisherman on shares since his return to Norway and there is nothing to show that his income has been diminished.
Considering the nature of plaintiff's injuries, his pain and suffering, the long duration of his hospitalization and treatment, the partial disability of the leg, and the impending ordeal of undergoing further surgery, we believe that the award of $6,000 is inadequate and that the allowance for pain, suffering, and disability should be increased to the sum of $7,500.
Therefore, the judgment appealed from is amended so as to increase the amount thereof to $11,004.25, and as thus amended and in all other respects it is affirmed.
Amended and affirmed.