BAILES, Judge.
This is a suit by Fireman’s Fund Insurance Company to recover from defendants, Nola Cabs, Inc., and James Short, the sum of $5,324.53, admittedly paid by the plaintiff to Anthony Milone as compensation benefits. Plaintiff is the workmen’s compensation insurer of Russell Ice Cream Company, employer of Milone. Defendants admit that James Short was the driver of the taxicab that struck and injured Milone; that Liberty Bell Cab Company was the owner of the taxicab; and that the cab was bonded by Nola Cabs, Inc.
The accident that gave rise to the payment by plaintiff of workmen’s compensation benefits to Milone occurred on July 2, 1958, in the City of New Orleans at or near the intersection of Palmyra Street and South Claiborne Avenue. ' In this section of the City, Palmyra Street is one of two streets between Canal Street and Tulane Avenue. The other is Cleveland Street. Palmyra Street is parallel to and a short block from Tulane Avenue. For the purpose of this discussion, we will consider that Palmyra Street runs from the river side of South Claiborne Avenue in the direction of the lake. South Claiborne Avenue is a wide street running from uptown to downtown from beyond the uptown side of Tulane Avenue, across Palmyra, Cleveland and Canal Streets. It is divided into two roadways, an uptown way and a downtown way, with a neutral ground between the two ways. Each way is divided into four *581 lanes, each about ten feet wide. The neutral ground has a width of about 50 feet, more or less. On the river side of South Claiborne Avenue, between Tulane Avenue and Cleveland Street, proceeding from Tulane Avenue, is a large filling station with a front extending from Tulane Avenue to the downtown side of Palmyra Street, and next a business known as “Fast Car Wash”, with a frontage of some 60 to 70 feet. The intersection of Palmyra Street and South Claiborne Avenue affords a place where traffic crossing Canal Street going uptown can make a U-turn in order to proceed back downtown. For the purpose of clarity, traffic moving from downtown to uptown on South Claiborne Avenue travels on the lake side of the street, and conversely, traffic moving from uptown to downtown travels on the river side of South Claiborne Avenue.
Anthony Milone was employed by Russell Ice Cream Company to sell ice cream and other similar merchandise from a tricycle type vehicle which he propelled in a manner like that of pedalling a bicycle. Immediately prior to the time of the accident, Milone had made his round of the filling station and then the Fast Car Wash, after which he determined to call on likely customers on the lake side of South Claiborne Avenue. Seeing that traffic on the river side of South Claiborne Avenue was stopped, awaiting the changing of the traffic control light on the uptown side of Tulane Avenue, he entered South Claiborne Avenue at a point about 45 feet toward Canal Street from the intersection of Palmyra Street and South Claiborne Avenue. He travelled on an angle from there to a point about 10 feet near the neutral ground corner of the intersection.
At about the same time that Milone set out to cross South Claiborne, James Short was proceeding from Canal Street in an uptown direction on South Claiborne, and wishing to reverse his direction and go back downtown, when he got to Palmyra Street, he made a U-turn and entered the same side of South Claiborne that Milone was attempting to cross. In point of time there is no doubt that Milone started to cross South Claiborne before James Short entered Palmyra Street to execute his U-turn. It should be noted at this point that there was no obstruction whatever to the view that Short had across the neutral ground in the whole general area in the direction of Milone. By the time Short made his U-turn, Milone was within a few feet of the neutral ground. The left front of the taxicab driven by Short struck the left side of the tricyclic vehicle occupied by Milone. He was thrown from it and incurred serious injuries.
Plaintiff alleges that James Short was negligent in the operation of the cab, which negligence included:
“a. Traveling at an excessive speed in a congested area.
“b. Making a left-hand turn and a U-turn at an excessive rate of speed.
“c. Failing to ascertain if it was safe to enter downtown lane of South Claiborne Avenue.
“d. Entering South bound lane of South Claiborne without stopping.
“e. Accelerated motor in order to beat traffic.
“f. Failing to look to his left before entering downtown lane of South Claiborne.
“g. Running into Anthony Milone and severely injuring him.”
Defendants, in their joint answer, deny any negligence on the part of James Short and allege that the sole and proximate cause of the accident was the negligence of Anthony Milone in failing to keep a proper lookout; driving into a public highway without first ascertaining whether or not the highway was clear; and failing to yield the right of way to a vehicle which had entered and preempted the street and was on a public highway; that the negligence of Milone is imputed to and bars recovery by the plaintiff.
*582 Alternatively, defendants allege that if they are found guilty of negligence, that the above-detailed acts of negligence of Milone constituted contributory negligence on his part, which is imputed to plaintiff and effectually bars recovery by the plaintiff.
The trial court rejected the demands of the plaintiff on the ground that Anthony Milone was guilty of contributory negligence.
The essence of the plaintiff’s contention is that Milone had preempted the crossing of the river side of South Claiborne Avenue, and that Short had the last clear chance to avoid the accident. Defendants’ contention is that Short was guilty of no negligence and that Milone was guilty of such gross negligence in “bucking” traffic on South Claiborne and deliberately placing himself in a position of peril as to bar recovery. In their brief defendants list the following points of their argument before this court:
“I. Anthony Milone was guilty of willful, wanton and gross negligence in bucking traffic on a State Highway at a busy time of the day, especially when he knew that it was a Highway and that traffic was always heavy.
“II. Anthony Milone was negligent in leaving a position of safety and proceeding into the highway, especially when he saw a moving vehicle coming, in an attempt to beat the moving vehicle across the street.
“III. There was no negligence on the part of the taxicab driver because the taxicab driver stopped and looked for traffic to his right and had no reason to believe that an ice-cream cart would be bucking traffic.
“IV. Palmyra Street is a closed street and comes to a dead end at South Claiborne Avenue, and James Short had no reason to expect any vehicles to be in the roadway on South Claiborne Avenue.”
There was only one disinterested eyewitness to this accident who testified. This witness, Edward C. Kurtz, at the time of the accident was driving his car towards Canal Street on South Claiborne Avenue and was between Tulane Avenue and Palmyra Street very near the point of contact between the taxicab and Milone’s vehicle. His testimony, in part, follows:
“Q Would you tell the Court in your own words just what you saw in the occurrence of this accident.
“A I had just come from passing by the Tulane Bachelor part of the Charity Hospital. I had passed the Gulf station and I was approaching the U-Wash-It on the right-hand side and the taxicab driver — I know not what particular company he was with or anything, was coming on Palmyra Street and getting ready to enter South Claiborne Avenue and I noticed this fellow looking towards his right which was toward where the traffic was coming, where I was, and I was over on my right hand side, meaning where the Gulf Station is, that’s the far right hand side of South Claiborne Avenue and this gentleman driving the taxicab was looking toward us, evidently seeing where the traffic was coming from, our area, and there was so much traffic coming and it appeared to me the gentleman was trying to get in front of the traffic that was coming and when he turned toward his left we could see that — I could see it through the window of my car, a gentleman driving an ice cream wagon had driven across South Claiborne Avenue and prepared to enter the cut there on Palmyra Street intersection. The taxicab driver ran into the man and knocked him off the ice cream wagon and so forth.
“Q Where was the taxicab driving when you first saw him?
“A On Palmyra Street.
“Q Was he in the neutral ground area?
*583 "A Yes, the neutral ground area.
“Q Was he moving or stopped?
“A He was moving, never did stop.
“Q Did you see the cab from that time until the accident happened?
“A Yes.”
While there is no doubt that Milone was guilty of negligence in attempting to cross South Claiborne Avenue some 45 feet downtown from the intersection of Palmyra Street and South Claiborne Avenue, at the time Milone entered South Claiborne Avenue, there was no immediate danger to him in doing so. However, it was not until he had reached a point of no return that his crossing became endangered by the movement of the taxicab making a U-turn into the river side of South Claiborne.
We believe this is a case for the application of the doctrine of last clear chance. In the case of Waagen v. Indiana Lumbermens Mutual Insurance Company (1962) La.App., 136 So.2d 831, the court reviewed the leading cases on the application of the doctrine of last clear chance, and on page 833 said:
This case is controlled by Rottman v. Beverly, 183 La. 947, 165 So. 153, and Jackson v. Cook, 189 La. 860, 181 So. 195, 197, decided by the Supreme Court, out of which evolved certain legal principles which we think determinative here, thus: Those who operate engines or motor vehicles must at all times keep and maintain a sharp and vigilant lookout ahead so as to discover the presence of persons who might be in danger and avoid injuring them if they can. Where a motorist actually discovers a pedestrian’s danger, even though it results from his own negligence, the motorist has the duty to save him from the consequences of such negligence if possible. The fact that the operator-of the car does not see the pedestrian who could have been seen will not absolve such driver from liability, because it was his duty to look ahead and to see.
“In the Rottman case the pedestrian was guilty of gross negligence which continued up to the moment of the accident and the motorist saw her in the perilous position in ample time to avert the accident had he used proper precautions. In Jackson v. Cook the pedestrian was guilty of gross negligence which continued up to the moment of the accident, but the driver of the automobile (as is in the instant case) did not see but could have seen plaintiff in his peril if he had been looking ahead.
“In Jackson v. Cook the Court said:
“ ‘ * * * the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see ; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability.
* * * * * *
“ ‘ * * * when a defendant sees another in peril of which the other is not aware, then a second or subsequent duty arises and devolves upon the defendant, which duty is to use every possible available means to avert injury. We said * * * (in Rottman v. Beverly):
“ ‘ “If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff’s negligence continues up to the accident.” ’
******
“ ‘ * * * The mere fact that the driver of the car in this case did not see plaintiff does not absolve the de- *584 fendaní from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. * ⅜ * ’ ”
In the last two points of the defendants’ argument, quoted supra, defendants seek to bring this case outside the pale of the doctrine of last clear chance by contending that there was no duty on James Short to look in the direction of the ice cream cart on which Milone was traveling as he (James Short) “had no reason to expect any vehicle to be in the roadway on South Claiborne Avenue.” Suffice it to say that James Short was under a positive duty to look where he was going. There was nothing to obscure or obstruct his view. He failed to discharge this duty to look, and had he looked, he would have seen and discovered Milone in the street. James Short was intent upon getting into South Claiborne ahead of traffic crossing Tulane Avenue, and in his haste, drove into the river side of South Claiborne Avenue without looking to his left, the direction in which he was traveling.
Inasmuch as defendant, James Short, had the last clear chance to avoid this accident, his negligence in failing to do so is the proximate cause of the accident and resulting injuries to Milone.
Accordingly, the judgment of the trial court is reversed, and there is judgment in favor of plaintiff, Fireman’s Fund Insurance Company, and against Nola Cabs, Inc., and James Short, in solido, in the amount of $5,324.53, together with legal interest from date of judicial demand until paid.
Expert witness fee of Dr. Dan D. Baker is fixed at $50 and is taxed as cost. Defendants are cast for all costs.
Reversed and rendered.