YARRUT, Judge.
This is an appeal from a judgment awarding Plaintiff and her three minor children a total of $22,400.00 for the wrongful death of her husband and their father, William E. Morris, who was killed instantly on September 26, 1963 at 3:00 a. m. on Airline Highway in Kenner, Louisiana, when he was struck by a car operated by Defendant, Harvey W. Paige. Judgment was rendered, in solido, against both Paige and his co-Defendant liability insurer, with the liability of the insurer limited to $20,000.00, the extent of its policy coverage, exclusive of interest and costs.
At the scene of the accident, Airline Highway has four lanes undivided, about forty feet wide; two lanes for northbound traffic (toward Baton Rouge) and two lanes for southbound traffic (toward New Orleans). Paige was on the southbound side of the highway and was proceeding toward New Orleans at a speed he estimated at 40 miles per hour, the legal speed limit, in the right lane nearest the shoulder of the road when his car struck the deceased. Paige testified he left Monroe, Louisiana, *389 at 6:00 p. m. the night before the accident and, after stopping for a brief visit with his father in Alexandria, decided not to stop over in Alexandria that night but to continue his journey to New Orleans because he had an early morning appointment there.
The decedent had been drinking since 3:00 p. m. the day before the accident, much of the time with a companion, Benjamin Paine, who testified to the following events before and after the accident: he and decedent were trying to hitch-hike on the lake (northbound) side of Airline Highway when decedent decided to cross the highway to hitch-hike a ride on a truck parked on the opposite side; as decedent began crossing, he was staggering at a 45-degree angle across the highway, with his back partially to the southbound traffic; Paine turned and observed the Paige car coming south at about 60 miles an hour, and saw it hit decedent and propel him'over the hood; as the car came to a stop, he went over and took deceased’s pulse but felt nothing. Later while both he and Paige were in Hayden’s Restaurant, on the river side of the highway, Paige told him that he didn’t realize at first that he had hit a man.
Two hours after the accident, Paige gave a statement to the effect that an “object” suddenly appeared in his path eight feet from his front bumper, and that he cut his vehicle to the left in order to avoid striking the object; when he felt a thud, he stopped his automobile on the highway and looked all around but did not see anything; he then pulled over to the shoulder of the road in front of Hayden’s Restaurant and only then saw a man on top of his automobile. However, at the trial, Paige changed his story and testified he saw decedent twenty-five or thirty feet before he hit him and that decedent was running across the highway. He also testified that, in his experience, one watches the right side of the highway more than the left; the side from which the decedent came.
At the time of the accident, the night was clear and there was no other traffic on the highway. In the block in which deceased was struck, there were two sources of light: a street light at Maria Street, and the lights from Hayden’s Restaurant. These two sources of light were from 280 to 400 feet apart, between which the accident occurred. The investigating police officer testified the scene was sufficiently well-lighted. Paige was not certain whether his headlights were on dim or bright at the time.
There is no question that decedent was contributorily negligent. The only issue is whether Paige had the last clear chance to avoid the accident. The trial judge held Paige could and should have seen decedent as he crossed the highway, and could and should have avoided striking him.
Defendants rely principally on Knighten v. Travelers Indemnity Co., La.App., 127 So.2d 51; Bagala v. Kimble, 225 La. 943, 74 So.2d 172; Franicevich v. Lirette, 241 La. 466, 129 So.2d 740; and Soileau v. New Hampshire Insurance Co., La.App., 160 So.2d 793, for the proposition that the last clear chance does not apply under the above circumstances. These cases are distinguishable from the case at bar.
In the Knighten case the motorist was blinded by the headlights of a parked car on the opposite side of the road, while in the instant case there was no other car on the highway at the time of the accident. In the Bagala case the court found that the proximate cause of the accident was the deceased’s darting from the pavement and running across the highway in front of an oncoming car. The trial judge evidently did not believe Paige’s story that deceased ran in front of him because he concluded that deceased was zvalking across the highway.
In his reasons for judgment the trial judge distinguished the Franicevich and Soileau cases in the following manner:
“In the Franicevich case the plaintiff stepped from the shoulder, a place *390 of safety, into tlie path of defendant’s approaching automobile when defendant was too close to avoid the accident. Had defendant seen plaintiff before he did, he had every reason to expect that she would stop before stepping into the roadway.
“In the Soileau case, defendant looked, saw the approaching automobile and believing she could safely cross the highway, proceeded to do so. Had the driver in that case seen defendant, he would have seen her looking at his approaching automobile and would have known that she was aware of his approaching vehicle.
“The instant case is distinguishable on the facts. Paige testified that when he saw Morris, he had a glimpse of his profile and he was moving on an angle away from his automobile. According to the testimony of Paine, neither he nor Morris saw Paige’s approaching car when Morris started across the highway. Had Paige seen Morris before he did, he would have seen exactly what he saw at the last instant, a pedestrian totally unaware of his approaching vehicle. When Paige saw Morris, whether he knew it was a man or thought it was an object and irrespective of whether the distance was 8 or 35 feet, he swerved and almost avoided him. It is apparent that even slightly more time with a deserted 4-lane highway plus the shoulders available to him, Paige would have been able to avoid striking Morris.
“Considering the length of time Paige had been on the road, his testimony that he was not looking to the left but more to the right as he drove along, it is not too difficult to understand his inattention and the fact that he did not see either of the two men on the roadway who should have been clearly illuminated by his headlights or the reflection therefrom. This is particularly true where there was no background of lights.”
We agree with the trial judge that Paige had the last clear chance to avoid the accident, i. e., that deceased was in a position of peril, of which he was unaware, and from which he was unable to extricate himself; that Paige could and should have seen him; and could and should have avoided the accident.
In Waagen v. Indiana Lumbermens Mutual Insurance Co., La.App., 136 So.2d 831, the duty of a motorist under such circumstances is clearly set out:
“Those who operate engines or motor vehicles must at all times keep and maintain a sharp and vigilant lookout ahead so as to discover the presence of persons who might be in danger and avoid injuring them if they can. Where a motorist actually discovers a pedestrian’s danger, even though it results from his own negligence, the motorist has the duty to save him from the consequences of such negligence if possible. The fact that the operator of the car does not see the pedestrian who could have been seen will not absolve such driver from liability, because it was his duty to look ahead and to see.” 136 So.2d at 833.
With regard to quantum, Plaintiff had left decedent, taking their three children with her to Texas twenty months before the accident. Although she testified that she corresponded with him, neither she nor the children had seen deceased during the entire twenty-month period. Moreover, Plaintiff testified her husband regularly sent her $75.00 in cash every month, and that this sum was definitely received by her during the months of April, May and June, 1963, although it was established that decedent was confined to Southeast Louisiana Hospital in Mande-ville from April 15, 1963 through July 22, 1963, for chronic alcoholism. Plaintiff was unable to produce any income tax returns filed by decedent for 1961 and 1962, and said she did not know from what source the 'funds were available to' him'while he was hospitalized. The admission records of the *391 hospital show that he had only $5.00 on his person when he was admitted.
The trial judge allocated the $22,400.00 award as follows:
For Plaintiff’s shock, sorrow and mental pain, $ 3,500.00
For the three children, for loss of love and affection of their father, $5,000.00 to each, 15,000.00
For loss of support to youngest child, 7 years old, 1,600.00
For loss of support to middle child, 8 years old, 1,300.00
For loss’of support to eldest child, 11 years old, 1,000.00
Total • $22,400.00
In his written reasons for judgment, the trial judge justified the quantum as follows :
“Plaintiff testified the cause of the separation was the excessive drinking of Morris. She further testified that a reconciliation would have been effected had Morris stopped drinking but there was some inconsistency in plaintiff’s testimony. She testified that she was in regular correspondence with Morris and although their reconciliation depended on his stopping drinking, he did not tell her that he was hospitalized in Mandeville for that purpose. Plaintiff did not know the reason for his hospitalization until after his death. It would seem to the Court that if these parties were intending reconciling that Morris would have reported his progress to his wife.
“Plaintiff further testified that Morris sent her $75.00 per month although the source of these funds is unknown as his employment was anything but steady. There was no designation of use of the funds and since Plaintiff was employed, presumably Morris was paying $25.00 per month for the support of each child.
“The evidence shows that Morris was drinking at the time he was killed, that he was unemployed and that he was more or less on the bum. His destination for which he was seeking to hitch a ride was uncertain. His ability to provide for the future support of his children was to say the least, problematical.
“Plaintiff is presently receiving $173.00 per month Social Security benefits for her children which exceeds by $100.00 the questionable contribution made by Morris. However, Defendants cannot claim credit for Social Security benefits resulting from deductions from Morris’ earnings during his lifetime.
“The children had not seen their father for a period of 20 months preceed-ing his death. But the youngest child had lived with him for almost 6 years, the next eldest for approximately 7 years and the eldest for approximately 10 years. There is no reason to doubt their love and affection for their father, or their loss.”
Considering all the evidence, we agree that Defendants are liable and the award is neither inadequate nor excessive; hence, the judgment of the trial court is affirmed; Defendants to pay all costs in both courts.
Judgment affirmed.