' FRUGÉ, Judge.
The plaintiffs, Mr. and Mrs. Venero, /' brought suit against Joyce Berry, the op•erator of a Chevrolet sedan which struck and injured Mrs. Venero and against State Farm Mutual Automobile Insurance Company, the liability insurer of the Chevrolet. The facts are as follows: On the evening of December 14, 1964, Mrs. Venero was walking in a northerly direction on the shoulder of Louisiana Highway No. 127 within the city limits of the Town of Jena. Miss Joyce Berry, driving with permission her father’s Chevrolet sedan, was also proceeding north on Highway 127. Weather conditions were clear and the Chevrolet’s headlights were burning, although it was not yet dark. The Berry Chevrolet was traveling at approximately 30 to 35 miles per hour and was followed by an automobile driven by Mrs. Jewel Smith. When the Chevrolet was only a short distance (Miss Berry would or could not estimate how far) from Mrs. Venero, Miss Berry testified that she observed a pedestrian in a dark coat walking north on the right edge of the pavement and that she applied her brakes but could not avoid striking the plaintiff. Miss Berry further testified that she saw the lights of an oncoming vehicle (Tr. 151) but that the lefthand or oncoming lane of traffic was unobstructed and, had she seen the plaintiff in time, she could have gone around her on the left side (Tr. 65). The right headlight area of the Chevrolet struck the-plaintiff in the back of the left thigh inflicting the injuries for which the plaintiffs seek recovery in this action.
The trial judge found as a matter of fact that Mrs. Venero was walking upon the paved portion of the highway with her back to approaching traffic in violation of The Highway Regulatory Act (LSA-R.S. 32:-216). He further found, evidently assuming the negligence of Miss Berry, that the doctrine of “last clear chance” and “discovered peril” had no application since, in his opinion, Miss Berry was temporarily blinded by the oncoming lights and after discovering the plaintiff on the road, did all she could do to avoid the accident.
On appeal, counsel for the plaintiffs argues that the trial judge erred in finding that Mrs. Venero was walking on the hard surfaced portion of the highway, and in failing to hold that Joyce Berry had the last clear chance to avoid the accident. With regard to the former specification of error, we adopt and confirm the trial judge’s determination that the plaintiff was walking upon the hard surfaced portion of the highway in view of the positive testimony of Miss Berry, corroborated by other eyewitnesses. Though the plaintiff and a colored woman who claimed to have witnessed the accident testified that Mrs. Ve-nero was walking on the graveled shoulder of the road, we will not disturb the lower court’s finding absent a demonstration of manifest error.[1]
The plaintiffs further urge that, assuming that Mrs. Venero was walking on the edge of the pavement, she is nevertheless entitled to recover under the doctrine of last. clear chance.
*843 Though often employed in other types of accidents, the doctrine finds wide application in instances where pedestrians are struck and injured by automobiles. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); See also Restatement of Torts 2d, Sec. 479; Prosser on Torts, 3rd ed., Sec. 65, pp. 437-443; 7 Am.Jur.2d “Automobiles”, Sec. 408, p. 955; Annotation, 4 A.L.R.2d 1260, Sec. 7; Blashfield—Cyclopedia of Automobile Law and Practice, Sec. 2801 et seq.
It is generally accepted that for the doctrine to apply, the following elements must be present:
1. The injured plaintiff was in a position of peril of which he was either unaware or from which he was unable to extricate himself;
2. Defendant was in a position to discover the plaintiff’s peril or by the exercise of reasonable care should have observed plaintiff’s danger; and
3. Defendant must have had an oppor- . tunity through the exercise of reasonable care, to avoid injuring the plaintiff. Gregoire v. Ohio Cas. Ins. Co., 158 So.2d 379 (La.App. 1st Cir. 1963); Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958).
In the instant case Mrs. Venero, through her own negligence, placed herself in a position of peril of which she was unaware, for the record reveals that she was incognizant of the approaching Chevrolet until it struck her from behind (Tr. 111). Similarly, we are satisfied that Joyce Berry had an opportunity, with the exercise of reasonable care, to avoid the accident, because she testified in no uncertain terms that if she had seen Mrs. Venero in time, she could have avoided striking her. (Tr. 65).
However, the second element, namely, that the defendant by the exercise of reasonable care should have observed the plaintiff’s danger, was found lacking by the trial judge. Our learned brother below was of the opinion that Miss Berry was temporarily blinded by the lights of an oncoming car and thus had no opportunity to observe the plaintiff on the edge of the roadway. We have examined the record with care, and will attempt to review the evidence on this point, bearing in mind the ever-present duty of observation imposed upon motorists operating vehicles within populated and congested urban areas.
The most important and the only direct evidence presented on this issue was the testimony of the defendant, Joyce Berry. On cross examination she stated:
“Q Now, am I correctly quoting you when you said that you noticed' the car coming from the other direction as you were proceeding north on the Olla highway?
A That’s right.
Q And that your attention was directed to this car?
A Yes, sir, I was watching that car, I noticed that I was meeting a car.
Q And that you weren’t blinded by the lights of that car but were watching it, is that correct?
A Now what — would you repeat that again ?
Q That you perceived this automobile approaching you from the north, that your attention was directed to it because it was coming toward you but that it wasn’t close enough to blind you with its headlights?
A I didn’t say that it definitely’ blinded me, I said that it probably had something to do with the fact that I didn’t see what was on the side of the road because of the lights.
Q. The reason that you didn’t see what was on the side of the road was that you were watching this other car, is that correct?
A. I suppose so, I — .”
*844 '*'*** * *
“Q Well now let me ask you this, are saying that you were blinded by the , lights of the oncoming car?
A I didn’t say that I was definitely blinded.”
Mrs. Jewel Smith, who was following Miss Berry’s Chevrolet at a short distance (two or three car lengths) testified that she intended to turn left into the parking lot of a small grocery store located diagonally across the highway from the point where Mrs. Venero was struck. She related that before she turned she saw Mrs. Venero walking along the edge of the highway and that in the midst of her left turn she heard the sound of brakes and looked back and saw that Mrs. Venero had been hit (Tr. 68). She further stated with relation to the proximity of oncoming traffic:
“Q Was there any oncoming traffic?
A Well I don’t recall. I mean it’s possible, it could have been but I don’t remember. But it couldn’t have been because I did turn into the left lane so if there had been I couldn’t have done that.”
The driver of the oncoming car, Mrs. hielen Lees, stated that she saw Mrs. Ven-ero’s outline framed in the glare of the lights of the Chevrolet and that she immediately began slowing her automobile, bringing it to a stop some 80 or 90 feet short of the point of impact.
Considering that the accident occurred at dusk, we conclude from the testimony of these witnesses that a finding that Miss Berry was temporarily blinded by the headlights of Mrs. Lees’ oncoming automobile and was thus relieved of the high duty of observation incumbent upon her is unsupported by the record before us.
Thus, the issue is presented: Did Joyce Berry, with the exercise of reasonable care, have the opportunity to observe Mrs. Ven-ero walking along the edge of the roadway? The evidence is most conclusive on this point. Every witness, including Miss Berry, confirmed that the accident happened at dusk and that though visibility was lessened by the approaching darkness, some light of day remained. Robert Little, whose home fronts on the highway where the accident occurred, testified that he was descending the steps on his front porch and heard the impact, and upon looking up saw Mrs. Venero’s body on the roadside at a distance of some 120 feet. Charles Beach, whose home is similarly situated, testified that he was repairing his automobile parked in front of his garage when he heard the impact of the automobile with Mrs. Ven-ero’s body. He further stated that when he glanced in the direction of the sound, that he could see the groceries which Mrs. Venero was carrying prior to the accident scattered along the edge of the highway and could see from his position Mrs. Venero’s body lying on the roadway (Tr. 90).
Mrs. Jewel Smith, following the Berry Chevrolet at a distance of two or three car lengths, testified repeatedly that she saw and recognized Mrs. Venero before she began her left turn into the driveway of the grocery store and seconds before the instant of impact. As outlined above, Mrs. Helen Lees, driver of the oncoming car, also testified that she could see Mrs. Ven-ero’s form illuminated by the headlights of the Chevrolet. The record reveals that visibility in the area in which the accident occurred is further facilitated by a street light located diagonally across the highway near the grocery store, and in this connection both Mr. Little and Mr. Beach, who saw Mrs. Venero’s body on the edge of the road, testified that the lights in the area may have aided their ability to see the plaintiff.
On the whole, then, a careful evaluation of the record convinces us that under the conditions existing at the time of the accident a careful and observant motorist traveling this highway in a populous area within the boundaries of a municipality could and should have seen the plaintiff in *845 time to stop or to swerve to the left and avoid striking her. According to the law of this state, it is the first duty of those who operate motor vehicles to keep a sharp lookout ahead to discover the presence of those who might be in danger. Jackson v. Cook, supra. The failure to heed this duty is negligence, and under the settled jurisprudence of this state, such a failure imposes liability on persons in control of motor vehicles and other dangerous instru-mentalities for injuries which they inflict upon less armored members of our society who happen upon the roadways. Jackson v. Cook, supra; Morris v. Firemen’s Ins. Co., 183 So.2d 388 (La.App. 4th Cir. 1966); Greyhound Corporation v. Dewey, 240 F.2d 899 (5th Cir. 1957); The Work of the Louisiana Supreme Court for the 1957-1958 Term, 19 La.L.Rev. 338.
We are mindful, of course, of the cases cited by the defendant in opposing the application of the doctrine of last clear change to the facts of this case. See Gregoire v. Ohio Cas. Ins. Co., supra; Benjamin v. Southern Farm Bureau Cas. Ins. Co., 113 So.2d 19 (La.App. 1st Cir. 1959); Bourg v. Central Mutual Ins. Co. et al., 157 So.2d 591 (La.App.2d Cir. 1963). We are convinced, however, that those cases have no application in this instance because in each one the court held that there was no reasonable chance for the defendant’s ■observation of the plaintiff’s position of peril, and in the case at bar we have expressly decided that Joyce Berry had such an opportunity. It is our view, therefore, that the plaintiff is entitled to recover from the defendants the amount of damages which she suffered as a result of the accident herein.

Quantum

Turning our attention to the issue of quantum, we note that at the time of the accident Mrs. Venero was seventy-three years of age. She was rendered unconscious by the impact and was taken by ambulance to the emergency room of the Jena hospital, where she was seen by Dr. Campbell. The results of his initial examination are summarized in a report filed in the record:
“Mrs. Venero was brought into the emergency room of the Jena Hospital on December 14, 1964 by ambulance following an accident. She was unable to give an account of the accident herself. My examination revealed cerebral concussion with loss of consciousness, maceration of skin on forehead with exposure of frontal bone due to stellate type of laceration, and multiple abrasions and contusions to the body.
“I referred this patient to Dr. Willis of Alexandria, Louisiana, for evaluation and definitive treatment after rendering first-aid. I did not see Mrs. Venero again following my examination the day of the accident 12-14-64.”
As noted in the report, Mrs. Venero was transferred by ambulance to Cabrini Hospital in Alexandria, Louisiana, where she was examined by Dr. J. T. Willis some two hours after the accident. Dr. Willis’ examination revealed two large lacerations of the head, one a bursting stellate-type laceration in the forehead which exposed the frontal skull bone and the other a smaller sickle-shaped laceration in the back of the head. The plaintiff’s body exhibited multiple contusions and brush burns of the elbows, knees and general body surface. In addition, the plaintiff’s left thigh displayed a large discolored area approximately the size of a dinner plate. The lacerations of the head were sutured by Dr. Willis and the patient was admitted to the hospital for follow-up treatment. On several occasions while in the hospital the hema-toma on the patient’s left thigh became swollen with accumulated blood, necessitating drainage of the area. After ten days Mrs. Venero was discharged from the hospital to the care of her home physician. Approximately one month later she returned to Dr. Willis where a re-examination revealed calcification of the hematoma in the *846 rear of the left thigh. Plaintiff was therefore readmitted to Cabrini Hospital on February 7, 1965, and under general anesthesia a large mass (approximately 2X6 inches) was removed and the muscle and subcutaneous tissue closed to obliterate the dead space and prevent recurrence. The patient was discharged after a five day stay in the hospital, and in the opinion of Dr. Willis has no permanent disability from the injuries which she suffered in the accident. The absence of residual disability is substantially confirmed by Mrs. Venero’s own testimony (Tr. 124).
We are of the opinion that the multiple injuries of Mrs. Venero which, as outlined herein, required hospitalization on two occasions and in one instance an operation under general anesthesia, would be justly compensated by an award of general damages in the amount of $4,000.00.
In connection with the medical treatment, the plaintiffs made ten round trips to Alexandria from Jena, Louisiana (86 miles), and four round trips to Urania, Louisiana, from Jena (17 miles). Some items of Mrs. Venero’s personal property, her glasses and her clothing, were destroyed in the mishap. The medical and hospital bills incurred by the community total some $855.45.[2] For these proven expenses we feel that the community of acquets and gains existing between Mr. and Mrs. Ven-ero is entitled to an award of special damages in the amount of $1,061.00.
For the foregoing reasons, the judgment of the district court is reversed and judgment is hereby rendered in favor of Gertrude Venero in the sum of $4,000.00, and in favor of C. A. Venero in the sum of $1,-061.00, against the defendants, State Farm Mutual Automobile Insurance Company and Joyce Berry, with interest from date of judicial demand until paid. The costs of all proceedings are to be borne by the defendants.
Reversed and rendered.

. This same woman was employed by Mrs. Venero after the accident as a domestic servant and the trial judge accorded little credibility to her testimony.

. Although these medical bills have been paid under the medical payments provision of Mr. Venero’s automobile policy, the community is nevertheless entitled to recover the total of the bills from the tortfeasor and her insurer. See Sonnier v. State Farm Mutual Automobile Ins. Co., 179 So.2d 467 (La.App.3d Cir. 1965).