129 So.2d 813 (1961)
William C. CALDWELL et al., Plaintiffs-Appellants,
v.
U. S. CASUALTY COMPANY OF NEW YORK et al., Defendants-Appellees.
No. 9380.
Court of Appeal of Louisiana, Second Circuit.
April 12, 1961.
Rehearing Denied May 10, 1961.
Certiorari Denied June 22, 1961.
Campbell, Campbell & Marvin, Minden, for William C. Caldwell, Mrs. Estelle Caldwell, and Speight Caldwell, plaintiffs-appellants.
Jack P. F. Gremillion, Atty. Gen., Carroll Buck, First Asst. Atty. Gen., Ferdinand A. Cashio, Asst. Atty. Gen., for the State, defendant-appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action by the parents for damages sustained by reason of the death of their son, Buford Caldwell, and by the administrator of his estate for damages for the pain and suffering endured by him during the interval between his injury and his death, and for funeral expenses and other charges resulting from his death and incidental to his interment.
This action is a companion case to that of Fullilove et al. v. U. S. Casualty Company of New York et al., 129 So.2d 816, which arose from the same accident, with which it was consolidated for the purpose of trial, and which has been this day decided.
For the reasons assigned in the opinion in the Fullilove case, all the issues in the instant case have been resolved favorably to plaintiffs and adversely to the defendant, leaving, for consideration, only the question of the quantum of awards of damages which should be made to these plaintiffs.
*814 The facts material to a consideration of this remaining issue may be briefly stated. Buford Caldwell was, at the time of his death, 34 years of age. He was unmarried and left, surviving him, his father and mother, William C. and Estelle Caldwell, and five major brothers and sisters. All except Glenn, the youngest, are married.
There was an unusually strong attachment between Buford and his parents, stemming in part, no doubt, from the fact that he was the "bachelor son," and they were approaching the twilight of their lives. Being a bachelor, his love was centered upon his parents, and was reciprocated.
While Buford worked in Shreveport, for the L. & A. Railway Company, earning approximately $400 per month, it was his custom to spend almost every weekend with his parents in Many, Louisiana. Because the other children had their families, to whom their first allegiance was due, and because he wanted to and felt it his chief responsibility, Buford had, for many years, been the mainstay of the parents.
When Buford was called to the service of his country in 1944, he made an allotment to his mother of $35 per month. Following his discharge in 1946, he began increasing his contributions to his parents for their support to approximately $500 per year. In 1950, Mr. Caldwell became totally disabled, and Buford "became the head of the house" financiallythat is, he materially increased his contributions to his parents, bought numerous household appliances, including a refrigerator, water system and washing machine, to make life easier and more pleasant for them; he kept up their insurance, paid their medical bills, bought seeds and fertilizer for their garden, and, more important than any of this, showered upon them that love and devotion which is so vital and important to elderly people who feel, altogether too often, that since they can no longer provide for themselves they are no longer wanted or loved. Buford gave, to these old people, the sense of "being wanted," the feeling that they were important, and that somebody cared, and this feeling of their souls was of infinitely greater worth than all the financial contributions he made and they were considerable.
He made them the beneficiaries of his insurance, and it is on the proceeds of that insurance that they are principally living today. It is quite true that, since 1953, Mr. Caldwell has drawn a small pension as a disabled veteran of World War I (this pension amounts to $78.75 per month at the present time), but that amount cannot be stretched to cover their bare living expenses.
As a result of this tragedy, these old people have experienced a loss for which no amount of money can compensate. Not only have they lost their chief support, but they have lost the love and devotion of a worthy son. Most probably, never a weekend comes but that their heartache returns with the realization that Buford is not coming home. Through the years, they have had the assurance that, no matter what happened to go wrong during the week, Buford would be home on the weekend and he would fix it. That assurance, and the attachment that formed with it, was extinguished in the unfortunate and fatal accident of June 13, 1958.
As to the injuries which Buford sustained, Dr. Marvin T. Green, speaking of his condition on being brought to the hospital, testified:
"A. He was wholly unconscious and gasping for breath and his face was all bashed in, his nose, his eyes, his mouth, the center of his face was just one large cavity and he was bleeding very profusely and he was also bleeding from the chin, that is, the jawbone had been completely disassociated, it was hanging down to the side and gurgling and blowing out blood as he tried to breathe."
*815 Mercifully, he lived only about two hours. As to whether he was conscious of the pain he was undoubtedly suffering during that period, the doctor did not positively know. Said Dr. Green:
"A. Well, now, I don't think I could say with any degree of certainty that he did nor did not feel any pain. Just because he was so mutilated he would not be able to express pain would not necessarily imply that he didn't feel pain. So I think that would be a little questionable.
"Q. A person in an unconscious state actually has no feeling, isn't that true? A. As I said, he had no way of expressing consciousness and I couldn't say positively whether he was or was not conscious of sensation. He was unconscious in the fact that he could not communicate consciousness, I'll say that much." (Emphasis supplied.)
Thus, although the deceased lived only for a brief period after his accident, he undoubtedly suffered much during that time.
The law is quite clear that the deceased, had he lived, would have had a cause of action for such pain and suffering; that this right of action is a heritable right, transmitted to his beneficiary-heirs on death, and may be the subject of recovery by the administrator of his estate. Reed v. Warren, 172 La. 1082, 136 So. 59; Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709; Langenstein v. Reynaud, 13 La.App. 272, 127 So. 764.
Because of the short duration of the suffering, we do not consider the award for this item should be great. We feel that the amount prayed for, $2,000 is a modest demand, and ought to be assessed.
With respect to the award which should be made to Mr. and Mrs. Caldwell, the following factors are pertinent:
1. Deceased was 34 years of age.
2. He was earning approximately $400.00 per month.
3. William C. Caldwell is 69 years of age and has a life expectancy, according to the American Experience Mortality Tables, of nine years.
4. Estelle Caldwell is 64 years of age, with a life expectancy of 12 years.
5. Deceased was, while not the entire source of their support, one of the principal sources thereof, making cash contributions of approximately $800.00 per year thereto, besides the help he provided in assisting them on weekends and vacations with their family chores and problems.
The quantum to be awarded for the death of a person to those in whom LSA-C.C. Art. 2315 of the Code vests the right to claim damages is, of necessity, an arbitrary figure, as to which much discretion is vested in the courts since the value of a life can never be measured in dollars and cents. Examples of comparatively recent awards in death cases are:
In the case of Himes v. Avinger, La.App. 2d Cir., 1956, 85 So.2d 304, an award of $10,000.00 each was made to the parents of a 15-year-old son, who was unemployed and dependent on his parents for support.
In the case of St. Julian v. State, La. App. 1st Cir., 1957, 98 So.2d 284, the court allowed $7,500.00 to a mother of a 29-year-old son, who was an inmate of the Louisiana penitentiary, serving a 15-year sentence (he had served only 3½ years), from whom she had not heard since six months prior to his conviction, and from whom she had never received monetary or other assistance.
After giving thorough consideration to the foregoing facts, as established by the record, we have concluded that each of the decedent's parents should be *816 awarded the sum of $13,750 for the loss of the love, affection, and companionship of their son, and for the loss of the support and maintenance which their son would have provided for them during the remainder of their lives.
The funeral expenses, as to which there is no dispute, amounted to $2,039.90.
For the reasons assigned, the judgment appealed should be, and it is hereby, annulled, avoided, reversed and set aside, and
It is now ordered, adjudged and decreed that the exception of no cause and of no right of action filed and urged on behalf of the State of Louisiana be and the same is hereby overruled; and, accordingly,
It is further ordered, adjudged and decreed there be judgment in favor of the plaintiff, William C. Caldwell, against the defendant, State of Louisiana, for the full sum of $13,750, with legal interest thereon from judicial demand until paid, less a credit of $1,250 received in settlement from the U. S. Casualty Company of New York, and, in favor of plaintiff, Mrs. Estelle Caldwell, against the defendant, State of Louisiana, for the sum of $13,750, with legal interest thereon from judicial demand until paid, less a credit of $1,250 received in settlement from the U. S. Casualty Company of New York.
It is further ordered, adjudged and decreed there be further judgment in favor of Speight Caldwell in his capacity as administrator of the estate and succession of Buford Caldwell, deceased, and for the use and benefit of said estate, against the defendant, the State of Louisiana, for the full sum of $4,039.90, with legal interest thereon from judicial demand until paid.
It is further ordered, adjudged and decreed that the defendant be, and it is hereby, taxed with all costs, except such for which it is exempt by law.
Reversed and rendered.