FRUGÉ, Judge.
The plaintiffs, the surviving brothers and sisters of Charles Herbert Fletcher, seek by this suit to recover damages for the alleged wrongful death of their brother. The decedent, 46 years of age, was killed when his parked automobile was struck from the rear by another vehicle driven by the defendant, Anthony A. Berard. Other defendants in this action are Berard Brothers, Inc. and United States Fidelity & Guaranty Company, the insurer of defendant’s automobile. United States Fidelity & Guaranty Company, as subrogee, filed a reconventional demand for the property damages to the Berard automobile, and after trial on the merits, the lower court rejected the plaintiffs’ demands and rendered judgment in favor of United States Fidelity & Guaranty Company for $1,071.16. From'this adverse judgment the plaintiffs have appealed to this court.
The facts of the accident are essentially undisputed. The collision occurred just before daylight on a level and straight portion of Louisiana Highway 86 approximately two-tenths of a mile east of the city limits of New Iberia, Louisiana. The deceased’s automobile, an Oldsmobile, had become disabled in some fashion and was parked without lights in the righthand lane of travel. At the time of collision the deceased was standing at the side or in front of his auto- *520 mobile and was performing some mechanical operation under the hood of the car. Approaching from the rear, defendant’s automobile collided with the decedent’s stationary automobile, instantly killing Charles Fletcher.
The only independent eyewitness was Peter Jean Louis, an elderly man who, a few moments before the collision, had driven his automobile to the scene with a can of gasoline for the decedent’s disabled vehicle. Peter Louis testified that he approached the decedent’s automobile at about 35 miles per hour and saw the car parked in the road without any lights and pulled over and parked on the shoulder of the road behind the disabled Oldsmobile. He stated that he poured the gasoline into the tank of the Oldsmobile but that the car would not start. Mr. Louis related that after the efforts to start the car failed, he got back in his automobile, drove around the parked Oldsmobile and up the highway a short distance where he turned around in a driveway and started back toward his home. He further testified that the lights of his automobile were on in the djm position and that as he passed the parked Oldsmobile, he noticed the defendant’s vehicle coming toward him (Tr. 18 and 19). Mr. Louis described the ensuing events as follows :
“Q Mr. Jean Louis, at the time you met the oncoming car which was driven by Mr. Berard, approximately how many feet were you from the automobile which was stalled in the road?
A About 150-200 feet. * * *
Q Did you have your lights burning on your automobile?
A Yes, I had my dimmers on. I run with dimmers on.
Q When the automobile in the opposite lane driven by Mr. Berard passed you, could you by observation and recollection tell whether or not the car was going very fast or slow?
A Oh, I couldn’t tell that. Nobody can tell the speed he was going but the man looking at the speedometer. I couldn’t say that. I don’t know.
Q Will you tell the court how you observed the accident? How you saw the accident?
A Yes, I was looking direct at the car to see would he get out of that lane. And he did. As long as he stayed in that lane, when I see the two car tops and that wasn’t a second after that the noise went.
Q Did you stick your head out of the
A Oh, my head was out of the car all of the time. I wanted to see if the man would get out the lane because I know the other fellow was in there.
Q Did any other car pass by you while you were parked in this right-hand lane?
A There wasn’t no other car coming. There wasn’t but two cars on the road at that time. My car and his car.
Q Did you see any obstruction in the left lane? In other words, in the lane that you were traveling which was stationary or moving or otherwise which would have prevented this automobile from going around the stalled vehicle ?
A There was nothing coming.”
The defendant, Anthony A. Berard, testified that he left his home at roughly 5 :30 A.M. and upon reaching the outskirts of New Iberia was met by an approaching automobile with its bright lights on. He stated that he dimmed his own lights as a signal to the aproaching automobile but that the approaching vehicle’s lights remained in the bright or high beam position. Mr. Berard further testified that the bright lights of the oncoming automobile blinded *521 him momentarily and that as soon as he passed the oncoming vehicle he switched his lights to the bright position and was confronted with the decedent’s automobile parked in his lane of travel a short distance ahead. He applied his brakes but was unable to stop in time to avoid the collision.
On appeal, the plaintiffs admit that the decedent was negligent in parking his automobile without lights or warning signals so that it obstructed the traveled portion' of the highway. They contend, however, that contrary to the trial judge’s determination, they should recover under the doctrine of last clear chance.
At the outset we might observe that one of the plaintiffs, a brother of the deceased, is appealing in his capacity as the administrator of the deceased’s succession. We have grave doubts whether a succession administrator is a proper party to institute this type of suit under the provisions of Civil Code Article 2315, paragraph 3.[1] See also Succession of Roux v. Guidry, 182 So.2d 109 (La.App. 4th Cir. 1966), certiorari denied; Young v. McCullium, 74 So.2d 339 (La.App. 1st Cir. 1954); C.C.P. Art. 428, Comment D. We find it unnecessary to discuss this issue, however, in view of the fact that the brothers and sisters of the deceased are before this court in their individual capacities in accordance with Civil Code Art. 2315, supra.
On appeal, the plaintiffs do not dispute the trial court’s findings as to the manner in which the accident occurred, but they urge as their sole specification of error that the trial court fell into error in failing to apply the doctrine of “last clear chance” to the facts of the case.
It is generally accepted that for the doctrine to apply, the following elements must be present: (1) the injured plaintiff was in a position of peril of which he was either unaware or from which he was unable to extricate himself; (2) defendant was in a position to discover the plaintiff’s peril or by the exercise of reasonable care should have observed plaintiff’s danger; and (3) defendant must have had an opportunity, through the exercise of reasonable care, to avoid injuring the plaintiff. Gregoire v. Ohio Cas. Insurance Co., 158 So.2d 379 (La.App. 1st Cir. 1963); Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958); Venero v. State Farm Mutual Automobile Ins. Co., 196 So.2d 841 (La.App. 3d Cir. 1967); see also Restatement of Torts 2d, Sec. 479; Prosser on Torts, 3d ed., Sec. 65; Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 2801, et seq,; Comment, The Last Clear Chance Doctrine in Louisiana — -An Analysis and Critique, 27 La.L.Rev. 269 (1967).
The trial judge found that Mr. Berard had no reason to anticipate the Fletcher vehicle parked on the darkened highway without lights or warning signals. He further found that after Mr. Berard’s discovery of the stalled and unlighted vehicle in his lane, he had no reasonable opportunity to avoid a collision with the parked automobile. In this regard the trial judge noted in his reasons for judgment,
“It is not certain from the evidence whether Mr. Berard’s left lane was free *522 of the Jean Louis vehicle when the stalled car came into his view. Mr. Berard says that it was not, and Jean Louis says that he was 100 to 150 feet away. The right side was a shoulder.
“But however this may be, the evidence is convincing, and uncontradicted, that Mr. Berard applied his brakes as soon as he saw the stalled car in his path. That, of course, is what a motorist is expected to do in such a situation; try to stop. As the skid marks were only forty-seven feet long, Mr. Berard was not much farther away than that distance when he saw the stalled vehicle. Only the reaction time, generally accepted to be three-fourths of a second, intervened between his seeing the vehicle and the application of his brakes.”
As noted above, the appellants do not contend that the trial judge erred in deciding the factual issues — only that he incorrectly refused to apply the doctrine of last clear chance.
However, the cases cited by appellants in support of their contention that the doctrine of last clear chance should apply to the present facts are largely inapplicable, for they involve pedestrians who were struck by motor vehicles rather than, as in the present instance, situations in which the plaintiff’s negligent conduct involves a risk of harm not only to himself, but to other motorists using the highway. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936); Bailey v. Reggie, 22 So.2d 698 (La.App. 1st Cir. 1945); McCarthy v. Blair, 122 So.2d 837 (La.App. 1st Cir. 1960); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); see also The Work of the Louisiana Supreme Court for the 1957-1958 Term, 19 La.L.Rev. 338; Comment, The Last Clear Chance Doctrine of Louisiana — an Analysis and Critique, 27 La.L.Rev. 269 (1967); Venero v. State Farm Mutual Automobile Ins. Co., supra.
After trial on the merits the judge of the lower court concluded that Mr. Berard did not have the last clear chance to avoid the collision because he was blinded by the bright lights of oncoming traffic, and we find no error in his determination on this point. Sittig v. Southern Farm Bureau Cas. Ins. Co., 198 So.2d 514 (La.App. 3d Cir. 1967) and authorities cited therein.
Likewise, we also affirm the judgment rendered by the lower court in favor of Mr. Berard’s subrogated insurer and against the succession of the deceased, Charles Fletcher.[2]
Therefore, for the foregoing reasons the judgment of the lower court is hereby affirmed, the plaintiffs-appellants to bear all costs.
Affirmed.
HOOD, J., concurs in the result but does not agree with the implication that Mr. Berard was not negligent.

. “The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.”

. No issue of contributory negligence on the part of Anthony Berard is before this court since the demand for property damage was urged by way of reconventional demand to the original suit, and in answering the reconventional demand the plaintiffs (defendants in reconvention) failed to plead the affirmative defense of contributory negligence. See O.C.P. Articles 1036, 1006. Furthermore, the plaintiffs-appellants did not attempt in brief or in oral argument before this court to raise the issue.