321 So.2d 836 (1975)
Sam W. WHITTINGTON and Royce H. Whittington
v.
Albert A. HOPFENSITZ and Milton Palliser.
No. 10375.
Court of Appeal of Louisiana, First Circuit.
October 15, 1975.
Rehearings Denied November 24, 1975.
*837 Clint L. Pierson, Jr., Covington, for plaintiffs-appellants.
Albert H. Hannemann, Jr., New Orleans, for defendant and third party plaintiff, Albert A. Hopfensitz appellee-appellant.
Richard P. Massony, Covington, for defendant-appellee Milton Palliser.
Before SARTAIN, ELLIS and BARNETTE, JJ.
BARNETTE, Judge.
This is a suit arising out of a tort claim for hospital, doctor and drug expenses, pain and suffering and mental anguish that resulted when Mrs. Lois Sandifer Whittington allegedly stepped on a roofing tack that pierced her shoe and caused a puncture would with serious after effects. Mrs. Whittington lived with her husband, Sam W. Whittington, in a house in Covington, Louisiana, which they were renting from one of the defendants, Albert A. Hopfensitz, the owner.
On the basis of a bid received March 2, 1970, Hopfensitz engaged a contractor, Milton Palliser, the other defendant, for certain repairs and renovations to the leased property, including replacement of the roof. Work began in early April, sometime just prior to the 9th, and continued until about May 4th. The roofing job was finished on or before April 11. The accident was alleged to have occurred on July 21, a date subject to some controversy. Suit was filed July 21, 1971.
Mrs. Whittington died from unrelated causes on June 5, 1971, without having instituted suit for damages for her personal injury. In addition to her husband, the decedent is survived by a son, Royce H. Whittington, and a daughter, Sammy Lanelle Whittington.
Sam W. Whittington and Royce H. Whittington now bring suit. In a joint petition, Sam W. Whittington is suing on behalf *838 of the community for $2,654 alleged due the community for doctor, hospital and drug expenses. Royce H. Whittington, as representative of the succession of the decedent, for $50,000 for pain and suffering allegedly suffered by the decedent, and $50,000 for mental pain and anguish.
They allege that ". . . a great deal of trash, debris, boxes, building materials, and roofing tacks were strewn about. . ." in an unworkmanlike manner, and that in spite of several complaints that only a small amount of the residue was removed. That as a direct result of the negligence of defendants, Hopfensitz and Palliser, in failing to clean the area properly and remove the roofing nails scattered about, three months later the accident occurred. In addition to his liability on account of this negligence, it is contended that the defendant Hopfensitz as owner-lessor is liable also under Articles 670 and 2322 of the Civil Code.
Hopfensitz filed a third party demand against Palliser for breach of contract and negligence and prayed for full indemnity of any judgment which might be rendered against him.
The accident happened while Mrs. Whittington was hanging out clothes in her yard. The sole of her right shoe and foot were penetrated by what was claimed to be a "roofing tack" causing a puncture would.
Mrs. Whittington was a diabetic at the time of the accident. She first went to Dr. J. H. Ketty, her family physician, for treatment. Dr. Ketty treated the decedent through August with various antibiotics and pain pills. On August 18 he performed an incision for drainage and packed the wound with iodoform gauze (to enable it to heal from the inside out). The wound did not heal and by September 22, Mrs. Whittington still had not improved significantly. At this time, Dr. Ketty, recognizing the possibility of a foreign body being in the wound, referred her to Dr. Patrick R. Hunter, a general surgeon.
From x-rays taken, Dr. Hunter diagnosed her condition as osteomyelitis and on September 25, Mrs. Whittington was hospitalized where she remained until October 21. She was finally discharged from Dr. Hunter's care on March 10, 1971, with her foot apparently healing, and on the road to recovery.
As stated above, the suit was filed on July 21, 1971. The plaintiffs alleged in their petition that the accident occurred on July 21, 1970. During the course of trial they offered testimony indicating that it occurred on July 22, 1970. The defendant, Hopfensitz, contended that the accident happened at the latest on July 19, and on that basis filed an exception pleading the prescription of one year.
The trial judge found as a fact that the accident occurred on July 22, 1970, and overruled Hopfensitz's plea of prescription. We find that the evidence supports this factual conclusion and we agree that the plea of prescription was properly overruled.
Dr. Ketty testified positively from his records that Mrs. Whittington first came in to him on July 22, and further that she told him that the accident had happened less than one hour earlier. It is also significant that Dr. Ketty testified that Mrs. Whittington was not in very much pain when she came in the first day. This would tend to indicate that she sought medical aid without undue delaybefore the infection had time to develop.
The defendants point out that in an earlier deposition, Sam Whittington stated that Mrs. Whittington did not seek medical aid until the third day after the accident, thus establishing the date of the accident as July 19. However, it is clear from a reading of the testimony as a whole, that Whittington was confused as to the date his wife had the accident and also as to the first time she went to the doctor. Further, Whittington testified that he was not aware at the time the above deposition was *839 taken that his wife had gone in earlier for a tetanus shot (given on the first office visit).
The testimony supports a finding that the suit was brought within one year of the accident. We find no manifest error in this factual conclusion by the trial judge. The exception of prescription was properly overruled.
The trial judge also found that the contractor, Palliser, performed his job in a haphazard and unworkmanlike manner; that there was less than adequate cleaning and that a substantial amount of nails were left scattered about even after Palliser was supposed to have made a final attempt at cleaning up.
Judgment was rendered in favor of Sam W. Whittington against Hopfensitz and Palliser, in solido, for $1,622.55 plus interest for expenses due the community, and in favor of Royce H. Whittington, as "the succession representative of the Succession of Lois Sandifer Whittington" against Hopfensitz and Palliser, in solido, for $12,000 plus interest. In addition, on the third party demand judgment was rendered in favor of Albert A. Hopfensitz and against Milton Palliser for full indemnity in the amount of $13,622.55. The defendants were both cast for all costs.
Defendant Hopfensitz appealed suspensively. An appeal bond of $17,000 was timely posted but no rule was filed pursuant to LSA-C.C.P. Art. 5123 to test the sufficiency of the bond. This court will not, therefore, question the validity of the appeal. LSA-C.C.P. Art. 5125.
The plaintiffs, Sam W. and Royce H. Whittington, appealed devolutively praying for an increase in the award of damages and also seeking to have the entire judgment in their favor made In solido. For the reasons hereinafter given we will not reach the questions of quantum or form of the judgment raised by their appeal.
The defendant, Palliser, did not appeal although he filed a brief in this court as "defendant-appellant." There is no petition for appeal, order or bond in the record before us. He is not before this court as an appellant. He is before this court only as an appellee as a result of the plaintiff's having taken a devolutive appeal. Hopfensitz appealed only so far as he is cast in judgment to the plaintiffs. The judgment in his favor as third party petitioner against Palliser has not been appealed.
After the appeal was lodged in this court, but prior to submission of the case for a decision, the defendant Hopfensitz filed a peremptory exception of no "right or cause" of action to the petition of Royce H. Whittington, alleging that under Civil Code 2315, only designated survivors have a right to bring an action for damages for personal injuries sustained by the decedent. Under C.C.P. Art. 2163 the appellate court has the discretion to consider a peremptory exception filed for the first time, if pleaded prior to submission of the case for a decision and if proof of the ground of the exception appears of record. We find that both conditions of this article are met and exercising our discretion we will consider the exception.
This is not a wrongful death action but clearly a survival action for Mrs. Whittington's personal injuries under Civil Code, Art. 2315. The only proper survival action under 2315 is one by one or more of the survivors named in that article in a personal rather than a representative capacity. In this respect, it makes no difference whether the decedent had filed suit or not on her own behalf before her death, nor does it make any difference whether she died as a result of the injury she sustained or from an unrelated cause. J. Wilton Jones Company v. Liberty Mutual Insurance Company, 248 So.2d 878 (La.App.4th Cir. 1970), writ refused 259 La. 61, 249 *840 So.2d 202 (1971). The court said (248 So.2d at p. 891):
"In our opinion the present language provides (at least if designated beneficiaries do survive) for the devolution of the victim's claim, even where he has instituted an action, [or to institute the action if the victim dies without having done so] to the survivors designated by art. 2315. The "right to recover" belongs to them, and not to the succession of the victim nor to his heirs as such."
The Succession, through its designated representative has no right to bring a survival action as was attempted here by Royce H. Whittington who specifically brought the action, not as a survivor under C.C. Article 2315, but as the representative of the Succession of Mrs. Whittington. There was some inference that he had been appointed administrator of her Succession but we do not find in the record specific evidence of the Succession proceeding alluded to. It was in this capacity as "Representative of the Succession" that he attempted this action for damages.
It is incumbent upon the court to apply a liberal construction to the pleadings to do substantial justice, but it is not possible for the court to place the parties in a different capacity or to merely switch the label Royce H. Whittington has placed upon his suit and correct the deficiency. The survival action, the right to which exists only by authority of C.C. Art. 2315, is an exclusive substantive right in favor of the named beneficiaries only. See Roux v. Guidry and other cases discussed infra.
Neither Sam W. Whittington, the surviving spouse, nor Royce H. Whittington, a surviving child, are in this court in their personal capacity as survivors pursuant to their right under Civil Code Article 2315. They are suing solely and specifically in their capacity as representatives of the community and the succession of the decedent respectively. Thus it is only the succession and the community that are before the court, neither of which has a right under 2315 to bring a suit and recover for damages for pain and suffering that the decedent suffered during her lifetime.
This very strict application of C.C. Art. 2315 finds ample support in our jurisprudence. Succession of Roux v. Guidry, 182 So.2d 109 (La.App.4th Cir. 1966), writ refused 248 La. 1106, 184 So.2d 27 (1966), with the comment: "There appears no error of law in the judgment of the Court of Appeal." In that case a wrongful death action was brought by the administrator (also a son) of the decedent's estate, in his capacity as administrator. Exceptions were filed as to the procedural capacity of the succession representative to bring the suit and as to nonjoinder of necessary parties the other named beneficiaries. The exceptions were not passed on and more than one year after decedent's death, a supplemental and amended petition was filed seeking to join the decedent's other children in their individual capacity. Defendant then filed an exception of prescription and peremption, contending that under Civil Code Art. 2315, a named beneficiary must file suit for wrongful death within one year and that neither the succession nor the succession representative is a named beneficiary.
The plaintiffs in Roux contended that the filing of the original petition by the administrator interrupted "prescription and peremption" in favor of all the heirs, and that their supplemental and amended petition simply cured technical defects in the original petition and related back to the date of filing of the original petition. The court held that the one year time limitation for filing suit under Article 2315 is one of peremption rather than prescription, because the statute creating the right of action (Art. 2315) also stipulates the delay within which that right is to be exercised (one year from the death of the deceased).
The court there noted that Roux was a wrongful death case, and that the same rationale *841 applies to both wrongful death and survival actions. The court said:
"It is our understanding that LSA-C.C. art. 2315 contemplates two separate and distinct causes of action; one, the survival * of an action for damages that an injured person would have had, had he lived, in favor of certain designated persons; and, two, a wrongful death * action, in favor of those same persons, for the damage that they sustained as a result of the death. Of course, the measure of damages in each case is different, and whether the action is one of survival or wrongful death, only the parties specified by the statute as beneficiaries (in this case the children of the deceased) are entitled to bring the action.

"The case before the Court is clearly a wrongful death action* and unquestionably is a cause of action belonging to the parties in whose favor the statute creates it. The statute requires that the possessor of the right exercise it within one year of the death. If the cause of action is not exercised within that year, by the filing of suit, it ceases to exist." (* Emphasis in the original) (Other emphasis added) 182 So.2d at p. 111.
The court in Roux went on to affirm the trial court's decision sustaining the defendant's exception. We are of the opinion for the reasons above discussed that the exception of no right of action should be sustained in this case. It should be noted that in Roux the court said that the beneficiaries in that case could have expressly appointed one of their number to act as their agent to represent them all in a personal capacity in matters concerning a particular litigation. However, the court found that they had not done so. There is no evidence in the record, nor has it been alleged, that such a relationship exists in the instant case.
Several cases have since followed Roux. In Davis v. State Farm Mutual Insurance Company, 208 So.2d 412 (La.App.4th Cir. 1968), writ refused 252 La. 175, 210 So.2d 55 (1968), with comment: "No error of law in the judgment complained of." The court cited Roux and found that a provisional administrator had no right or cause of action to recover for the estate of the decedent for damages for wrongful death. The exception was brought and maintained more than one year after the decedent's death, and thus the cause of action of the beneficiaries had ceased to exist.
In Vessel v. St. Paul Fire & Marine Insurance Co., 276 So.2d 874 (La.App.1st Cir. 1973), a direct action was brought against the professional liability insurer of an attorney on an allegation of malpractice in bringing a suit improperly under C.C. Art. 2315. The attorney had initially filed suit as a wrongful death action, in the name of the "Administrator." After more than a year from the date of the accident he amended the pleadings to name the survivors individually. Defendant's exceptions of prescription and peremption were sustained as to the wrongful death claims. The court recognized the principle of Roux, but denied recovery against the attorney's insurer by a finding that on the merits, there could have been no recovery in the wrongful death suit even if the exception had not been upheld.
Likewise, the court in J. Wilton Jones Company v. Liberty Mutual Insurance Company, supra, recognized the principle of Roux. This was a survival action. The victim died some eighteen months after bringing his own suit. Substitution was allowed after more than one year had elapsed from the decedent's death. This result was based on the theory that the right to recover had not abated because the action had already been instituted. There was a distinction made between a "right of action," i.e., a right to bring suit, which is limited by the one year peremption of C.C. art. 2315, and the "right to recover" after suit has been timely instituted, which will endure either until judgment or abandonment.
*842 The case holds that where the tort victim has already instituted an action for his personal injury, the instituted action does not abate upon his death, but becomes the property of the designated survivors of C.C. art. 2315, and that the survivors need not substitute themselves as parties in the victim's instituted action within the one year period provided by art. 2315.
In Fletcher v. Berard, 198 So.2d 519 (La.App.3d Cir. 1967), writ refused 250 La. 980, 200 So.2d 666 (1967), the surviving brothers and sisters of the decedent sought recovery of damages in a wrongful death action instituted by a brother as administrator. The court expressed "grave doubts" as to whether, under Roux, a succession administrator is a proper party to institute such a suit; but found it unnecessary to discuss this issue in view of the fact that the brothers and sisters of the deceased were before the court in their individual capacities in accordance with Civil Code Art. 2315.
In that case, peremption was not an issue (apparently a year had not passed since the decedent's death when the substitution took place). It would be unreasonable and serve no useful purpose, under these circumstances to require that a new action be brought solely for the sake of theory.
In Caldwell v. U.S. Casualty Company of New York, 129 So.2d 813 (La.App.2nd Cir. 1961), the tort victim died within a few hours of the accident. The surviving father and mother were awarded damages for loss of love and affection and loss of support. The administrator of his estate was awarded damages of $2,039.90 for funeral expenses which were not disputed, plus $2,000 for pain and suffering of the deceased. The court said:
"The law is quite clear that the deceased, had he lived, would have had a cause of action for such pain and suffering; that this right of action is a heritable right, transmitted to his beneficiary-heirs on death, and may be the subject of recovery by the administrator of his estate. Reed v. Warren, 172 La. 1082, 136 So. 59; Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709; Langenstein v. Reynaud, 13 La.App. 272, 127 So. 764."
No issue was made of the capacity of the brother who sued as "administrator" for the expenses borne by his estate (funeral) and also for an award for pain and suffering. Had an issue been made of his suit in his capacity as "administrator" for pain and suffering, and not as a survivor under Civil Code Art. 2315[1] we do know if the court would have upheld his right of action for this item of damage. Since the court did not specifically rule on this issue it having not been raisedthis right of the administrator to sue for pain and suffering of the deceased, was at most, approved only by implication. We do not interpret that decision, as it may so imply, as being in conflict with the later case of Roux v. Guidry, supra, and with the rationale we have adopted in this case, but if so, we must disagree with that case on this particular point.
The only issue remaining before the court is the question of liability for the medial expenses incurred on behalf of the community in connection with Mrs. Whittington's treatment. The trial court awarded $1,622.55 plus interest from date of judicial demand until paid. In this respect the judgment is correct, both from a factual and legal respect.
For the reasons hereinafter stated we find it unnecessary to consider whether proper authority for recovery is under Civil Code Articles 670 and 2322 as alleged or under Article 2695. We also find it unnecessary *843 to decide whether or not the hazardous conditions present in this case constitute a "vice" or "defect" in the premises for which the landlord or owner can be held responsible.
The trial court, as a matter of fact, found that the defendant-contractor roofed the house in a haphazard manner and did a less that adequate cleaning of the yard. We can find no manifest error in this finding.
Mr. Palliser was well aware of the danger roofing tacks impose. He himself testified that more often than not they fall point up. There is no testimony in the record to show the usual methods of roof removal used by other contractors in the area or the prevailing standard of care. However, it is abundantly clear from the record that no effort was made to limit either the scattering of tacks or the area upon which they fell. Mrs. Robert Rupp, the next door neighbor, when questioned on cross examination if the nails were scattered all about or just under the eaves of the house, testified that she observed that a flat shovel was used to remove the old roof and that it was scattered when shoveled off. This would seem to make more difficult the task of cleaning up properly.
The testimony indicates that there was a substantial amount of debris from the job that was left in the yard for several weeks. Complaints were made, and at least two attempts to clean up were made (subsequent to whatever degree of cleaning up was done during and immediately after the roofing job). Sam W. Whittington testified that he and his daughter raked and and picked up debris, including a substantial amount of roofing tacks, sometime subsequent to the time the work had stopped. Milton Palliser testified he returned to clean up with his son in response to a request by Mr. Whittington. Neither party is sure of the exact date that these subsequent attempts to clean up were made; nor is it clear from the testimony which party was the last to make an attempt.
It is immaterial whether there was a substantial amount of trash and debris left on the premises for some time. Likewise it is immaterial to the outcome of this case that the contractor was less than thorough in cleaning up during and immediately after the roofing work or that there was a significant lapse of time between the job and a belated clean up attempt. The important thing is that the trial court found that there were a number of tacks remaining after all efforts to clean up had ceased, and for that reason found negligence which was the direct cause of Mrs. Whittington's injury. We find no manifest error in this factual conclusion.
This should not be interpreted as holding that a roofing contractor must always find and remove every roofing tack in order to avoid liability based on negligence. This would be too great a burden, if not an impossible one. Every case must be considered on the facts peculiar to it and negligence must be determined in the light of all the circumstances.
In upholding the trial court's finding of negligence on the part of the independent contractor, Palliser, it follows as a matter of law that the lessor, Hopfensitz, is also liable. west Bros. v. Pierson, 2 So.2d 71 (La.App.2d Cir. 1941); Mercury Ins. Co. v. Hodges, 199 So. 526 (La.App. Orleans 1941); Clark v. Engelhardt, 9 La.App. 334, 120 So. 498 (La.App. Orleans 1928).
The following was stated by the court in Mercury Ins. Co. v. Hodges, supra:
"We readily understand that, after a lease is already in existence and when there is no contractual or legal obligation to do any alterations, or to do any refinishing, if one of the parties prevails on the other to do such work, or to permit such work to be done, and they both *844 know from the nature of the work that a contractor must be employed to do it, then, if damage results from negligence of a competent contractor, there is no liability in the one who employs the contractor. It seems equally reasonable to hold, as we did in Clark v. Engelhardt, supra, that if, by law or by contract, there is imposed on either of the parties an obligation to make such alterations, or to do such refinishing, the fact that an independent contractor has been employed to do the work will not relieve the party employing the contractor from liability for the results of the negligence of the said contractor. In that case we said: `It has also been held that, where a landlord is under a legal obligation to make repairs, he cannot escape responsibility for injuryt to tenant's goods by showing that the damages were caused by the independent contractor.'" 199 So. at 531, 532. (Emphasis added)
It cannot be seriously disputed that the lessor, Hopfensitz, was under a legal obligation to make major repairs to the roof. This obligation was recognized by the court in Lirette v. Sharp, 44 So.2d 221 (La.App.1st Cir. 1950), wherein the court said:
"It is fundamental that under Revised Civil Code Articles 2692, 2693, and 2729, it is the duty of a lessor to maintain in repairs the roof in condition such as to serve for the use for which the structure has been leased during the continuance of the lease . . ."
See also Keller v. Thompson, 121 So.2d 575 (La.App.2d Cir. 1960).
We therefore hold that the lessor, Hopfensitz, cannot escape liability under the "independent contractor" theory. As lessor He is responsible in solido with the independent contractor for the latter's negligence in the performance of the contract for necessary repairs, which by law the lessor is obligated to make.
For the foregoing reasons the judgment in favor of Sam W. Whittington and against the defendants, Albert A. Hopfensitz and Milton Palliser, in solido, in the sum of $1,622.55, insofar as same was appealed by Albert A. Hopfensitz is affirmed.
The judgment in favor of Royce H. Whittington as the succession representative of the Succession of Lois Sandifer Whittington and against the defendants, Albert A. Hopfensitz and Milton Palliser, in solido, in the amount of $12,000 plus interest, insofar as same was appealed by the defendant Albert A. Hopfensitz, is annulled and set aside and there is now judgment in favor of the appellant, Albert A. Hopfensitz, and against Royce H. Whittington as succession on representative, rejecting the plaintiff's demands and dismissing his suit.
The appellant, Albert A. Hopfensitz and the appellee, Royce H. Whittington are cast, each for one half, for all costs.
Affirmed in part, annulled in part, and judgment rendered.
NOTES
[1] In that case since the father and mother both survived the tort victim, his brother would have had no personal right of action for pain and suffering under Civil Code Article 2315.