506 So.2d 522 (1987)
Ethyl ("Obie") O'BANNON, as Legal Tutor for the Minor Benjamin Fleming-Azar O'BANNON
v.
Robert F. AZAR.
No. 85 CA 1518.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Rehearing Denied May 6, 1987.
*523 Paula Perrone, Metairie, for plaintiff-appellant Ethyl ("Obie") O'Bannon as Legal Tutor for the Minor, Benjamin Fleming-Azar O'Bannon.
James D. Thomas, II, Baton Rouge, for defendant-appellee Robert F. Azar.
Before LOTTINGER, SHORTESS and CARTER, JJ.
*524 SHORTESS, Judge.
In 1980, Soula O'Bannon filed suit in Orleans Parish against Robert F. Azar (defendant) asking that he be declared the father of her minor child and be condemned to pay child support. After trial on the merits, judgment was rendered in favor of defendant, dismissing the suit. O'Bannon appealed, but that judgment was affirmed. O'Bannon v. Azar, 435 So.2d 1144 (La. App. 4th Cir.1983). O'Bannon's application for a writ of certiorari was denied by the Louisiana Supreme Court. O'Bannon v. Azar, 441 So.2d 749 (La.1983). In January of 1985, Ethyl "Obie" O'Bannon (tutor) filed the present suit in the East Baton Rouge Parish Family Court, praying that defendant be declared the child's father and be condemned to pay child support. Defendant responded with the peremptory exception of res judicata. The trial judge sustained the exception, and the tutor perfected this appeal.
If the child was not a party to the first suit, the objection of res judicata was improperly sustained. There are three identities which must exist for res judicata to preclude relitigation: "(1) an identity of the parties, (2) an identity of `cause' and (3) an identity of the thing demanded." Welch v. Crown Zellerbach Corp., 359 So.2d 154, 156 (La.1978); LSA-R.S. 13:4231. The heart of the tutor's argument is that the child was not before the court in the first suit because the mother's petition indicated that she sued in her own name and not as representative of the child; therefore, the first requirement, an identity of parties, is missing.
The Civil Code gives the right to bring a filiation action to the child who wishes to prove that the defendant is his father. LSA-C.C. arts. 208 and 209. Should the child not have the procedural capacity to bring the suit, "the child's mother or other interested party" must institute the filiation proceedings. See Succession of Grice, 462 So.2d 131, 135 (La. 1985). The filiation action and the child support action share this trait: they are both based on a right that is the child's. See Dubroc v. Dubroc, 388 So.2d 377, 380 (La.1980). The suit brought and decided in Orleans Parish, affirmed by the Fourth Circuit, with a writ denial by the Supreme Court, was either initiated by a party without a right of action, or Ms. O'Bannon must be viewed as having proceeded in her representative capacity.
As we noted above, both the filiation and the child support actions are based on rights that are the child's. The Supreme Court's discussion of the right to child support suggests another telling parallel:
[W]hat obliges parents to nourish and rear their children is the fact of maternity or paternity and not that of marriage. Planiol, § 1681. To facilitate the enforcement of this obligation, however, each spouse is given, in his or her own name, a right of action against the spouse without custody to compel him or her to turn over in advance the money necessary to contribute toward the child's maintenance.
Dubroc, 388 So.2d at 380 (emphasis supplied). The court describes the child as "the veritable creditor of each parent's unilateral obligation for his upbringing" and the duty of support as "a legal duty owed to the child" and as "the child's right to support and upbringing". Dubroc, 388 So.2d at 380 (emphasis supplied). Yet the right to enforce this obligation is given to the spouse "in his or her own name."[1] If an action for child support may be brought and a binding judgment obtained in the name of one of the child's parents, we think it appropriate that a mother in her own name may obtain a binding judgment enforcing the child's right to prove filiation and receive child support.
*525 The position just outlined notwithstanding, the tutor's objection to the plea of res judicata is that the child should not be deemed to have been before the court in the Orleans Parish suit because the mother did not announce her representative capacity. The tutor argues that the capacity in which she was before the court cannot be presumed. LSA-C.C.P. art. 855 addresses this point:
It is not necessary to allege the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of a legal entity or an organized association of persons made a party. Such procedural capacity shall be presumed, unless challenged by the dilatory exception.
If, as the tutor suggests he should have, the defendant had raised the exception of no right of action and if it had been sustained, the plaintiff could simply have added the magic words indicative of representative capacity and proceeded with the case. Nothing in the tutor's brief or trial memoranda leads us to believe that the resulting litigation would have differed materially from what transpired in the Orleans Parish court, the Fourth Circuit, and the Supreme Court. But no peremptory or dilatory exception relevant to this matter was filed in the Orleans Parish suit. Therefore we must ask if, under the authority of LSA-C. C.P. art. 855, the suit, as it actually progressed through the courts, may be treated as one brought in a representative capacity.
Louisiana courts have not considered the application of Article 855 to facts such as those before us. However, according to the Official Revision Comments on Article 855, "[t]he language of Fed. Rule 9 was changed only to the extent necessary to employ Louisiana terminology in Arts. 857 through 860," and the Historical Note indicates that the source of Article 855 is Federal Rule of Civil Procedure 9(a).[2] Louisiana courts have consistently ruled that when an article in our Code of Civil Procedure is essentially based on the federal rule, "we may look for guidance" to the federal courts' interpretations of the source rule. Parish National Bank v. Lane, 397 So.2d 1282 (La.1981); Madison v. Travelers Insurance Co., 308 So.2d 784, 786 (La. 1975); Duplessis v. Hullinghorst, 255 So.2d 236 (La.App. 1st Cir.1971).
In Parker v. Graves, 479 F.2d 335 (5th Cir.1973), the plaintiff sued his former employer under 42 U.S.C. § 1983. That statute does not permit an action against a private person, and plaintiff had failed to indicate in his pleadings that he was suing the defendant in his official capacity. The court remarked
[a] person's capacity need not be pled except to the extent required to show the jurisdiction of the court. Fed.R.Civ.P. 9(a). Failure to allege the official capacity in the caption is merely a formal error and not a fatal defect. 5 Wright and Miller, Federal Practice and Procedure, § 1321 (1969). The allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action.
Parker, 479 F.2d at 336. The court's examination of the complaint revealed that plaintiff was alleging that defendant had acted unconstitutionally under color of state law. It concluded that the allegations taken as a whole brought the case within the purview of 42 U.S.C. § 1983.
A federal district court was presented with a defendant's request for dismissal of the suit based on his having been sued in his individual capacity rather than as trustee in Colorado Springs Cablevision, Inc. *526 v. Lively, 579 F.Supp. 252 (D.Colorado 1984). The court rejected defendant's request with the following reasoning:
Lively also seeks dismissal because he was sued in his individual capacity and not as a trustee. According to Fed.R. Civ.P. 9(a) it is unnecessary to plead the capacity in which a party is participating in an action. See Parker v. Graves, 479 F.2d 335 (5th Cir.1973); Berghane v. Radio Corp. of America, 6 F.R.D. 561 (D.C. Del.1947) (plaintiff in action for patent infringement need not allege that she was the plaintiff "for the use of" or "benefit of" others). The rationale behind this rule is that the nature of the plaintiff's cause of action can be determined from the body of the complaint. Therefore, there is no need for a formal allegation of capacity. Parker v. Graves, 479 F.2d 335 (5th Cir.1973); Fed. Proc., Lawyers Edition, 62:119 (1981); 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1292 (1969).

Cablevision does not refer to the existence of a trust in its complaint. But it is apparent that the complaint, taken as a whole, is directed against Lively as the owner of Parkmoor.... As the complaint sufficiently describes the capacity in which Lively is being sued, Rule 9(a) makes more specific allegations unnecessary.
Lively, 579 F.Supp. at 255.[3]
We find this logic persuasive. When it is clear from the petition taken as a whole that the suit is being brought in a representative capacity,[4] the fact that a plaintiff may fail to proclaim that capacity should not necessarily be dispositive. When, as is true in this case, a child's right to establish filiation has been vigorously prosecuted by his mother from trial to court of last resort, her failure to note on the petition that she is the child's representative should not destroy the binding effect of the resultant judgment. Accordingly, we hold that the mother represented the child in the suit filed in Orleans Parish. This position is consistent with the rule that pleadings should be construed to do substantial justice. LSA-C.C.P. art. 865. As Dean McMahon has observed,
The new code embodies procedural rules designed to permit the trial of a case to serve as a search for the truth, and to have its decision based on the substantive law applicable, rather than upon technical rules of procedure.
The procedural philosophy of the Louisiana Code of Civil Procedure is summed up by the language of its Article 5051: "The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves."
H. McMahon, The Louisiana Code of Civil Procedure, 21 La.L Rev. 1, 22-23 (1960).
Lee v. United States Fidelity & Guaranty Co., 433 So.2d 903 (La.App. 3d Cir. 1983), reflects such a liberal view of pleadings. There, a father sued on behalf of his son who was fifteen years of age at the time of the accident which gave rise to the action. The son had married before that accident, was thus emancipated, and could bring suit individually. The appellate court ruled that the father had no right of action to sue for the emancipated minor's injury. Recognizing this "technicality," the court simply amended the judgment to make the son the party plaintiff. In Sharff v. Tanner, 486 So.2d 1047 (La.App. 2d Cir.1986), a mother filed suit seeking to prove the paternity of her minor child and praying for child support. The putative father argued "that the evidence fails to show the child was properly represented in court," as a tutor had not been appointed. "This argument is essentially one of procedural capacity. Under LSA-C.C.P. art. 855, procedural capacity is presumed unless properly *527 challenged by a dilatory exception." Sharff, 486 So.2d at 1051. Thus the court applied the presumption of Article 855 and refuted an attack premised on the child's not being properly represented.
Because of the extensive litigation in this matter, our ruling comports well the policy which underlies res judicata: the avoidance of a multiplicity of suits and prevention of the harassment, delay and unnecessary expense to a defendant caused by multiple suits. Sutterfield v. Fireman's Fund American Insurance Co., 344 So.2d 1159. (La.App. 4th Cir.1977). It cannot seriously be argued that the goal of judicial economy would be furthered should those representing the child be given yet another opportunity to prove their case.
The tutor argues that a court cannot supply representative capacity if it is not announced. He cites the following language from our opinion in Whittington v. Hopfensitz, 321 So.2d 836 (La.App. 1st Cir. 1975):
It is incumbent upon the court to apply a liberal construction to the pleadings to do substantial justice, but it is not possible for the court to place the parties in a different capacity or to merely switch the label Royce H. Whittington has placed upon his suit and correct the deficiency. The survival action, the right to which exists only by authority of C.C. Art. 2315, is an exclusive substantive right in favor of the named beneficiaries only.

Whittington, 321 So.2d at 840.
We distinguish Whittington for three reasons: (1) That case is specifically and explicitly based on the categories of beneficiaries outlined in LSA-C.C. art. 2315; as we stated in Whittington, these categories are subject to "very strict application." Whittington, 321 So.2d at 840. The facts before us do not involve the survival action; rather, the Orleans Parish suit presents the picture of a mother (who was also natural tutor) diligently exercising her duty to protect her minor child's rights. (2) In Whittington, the plaintiff brought suit as a succession representative; that is, he affirmatively claimed to act in a representative capacity. As a result, there could be no doubt that he was not proceeding individually. Here, there is at the very least some question as to whether Ms. O'Bannon was proceeding individually or as representative. We have resolved that question by examining whose right was being asserted and by reading the entire petition to determine the true capacity of the party, in light of LSA-C.C.P. art. 855. (3) Because the plaintiff in Whittington clearly announced his representative status, that case did not address the role Article 855 should play as a guide to interpreting the petition.
Finally, the tutor contends that the judgment in the Orleans suit should not be given the effect of a thing adjudged because the mother had not qualified as tutor of the minor child. LSA-C.C.P. art. 1842. He argues that court-approved qualification as tutor is a legal prerequisite to the mother's winning a binding judgment. Defendant cites Cacibauda v. Gaiennie, 305 So.2d 572 (La.App. 4th Cir.1974), and Southern Shipbuilding Corp. v. Richardson, 372 So.2d 1188 (La.1979), as authority for his response that the natural tutor need not qualify as tutor before she brings suit. The relevance of Cacibauda can be questioned, as the holding rests largely on the now-repealed LSA-C.C. art. 253.[5]Cacibauda, 305 So.2d at 583. We have distinguished Southern Shipbuilding when ruling that
a mother has the procedural capacity to bring an action on behalf of her minor child only when she is the tutrix of that child or the administratrix of that child's estate.
Scott v. Jack's Cookie Co., 413 So.2d 1334, 1335 (La.App. 1st Cir.1982);[6] LSA-C.C.P. arts. 683 and 4061.
*528 The issue in Scott was whether the trial court properly maintained that defendant's dilatory exception of lack of procedural capacity. Thus that case differs from the present case in that here neither that dilatory exception nor the peremptory exception questioning plaintiff's right to sue was raised in the first suit. Because of this, defendant has waived his right to assert such attacks. Nicosia v. Guillory, 322 So.2d 129 (La.1975); LSA-C.C.P. art. 928. And because procedural capacity is presumed, the Orleans court was correct in allowing the action brought by the mother on behalf of the child to proceed to judgment. LSA-C.C.P. art. 855. Having ruled that in fact and law the child was represented by the mother in the first suit, we find that the child through his tutor cannot now be heard to complain of the failure to qualify. Given the thorough prosecution of the paternity action, this ruling is consistent with the principle underlying Southern Shipbuilding and Cacibauda: The protection of the minor's interests.
The tutor insists that Louisiana statutes and jurisprudence have always placed protection of the minor's interest among the highest of priorities. That is a tradition from which we will not deviate. According to the Fourth Circuit's opinion in the first case, the trial produced a "voluminous" record; at least fifteen witnesses were called, including two experts. Apparently the tutor is not troubled by the counsel employed in the first case, for he has retained the same attorney. Scientific evidence, including the results of various blood tests, was presented. Because of those facts, we cannot say that this particular minor's interests have not been protected. As the Supreme Court remarked in another context,
when all facts have in reality been disclosed, as here, and fair notice is given to all parties with no surprise claimed, substance would be sacrificed for wooden adherence to technicality to insist that a judgment rendered on this basis cannot stand.
Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297, 302 (La.1973). We hold that Soula O'Bannon's minor child was represented in the suit filed in Orleans Parish, that there is an identity of parties in that suit and this, and that, therefore, defendant's peremptory exception raising the objection of res judicata was properly sustained by the trial court. We affirm the trial court's judgment and tax costs to the tutor.
AFFIRMED.
NOTES
[1] Dubroc dealt with a dispute between divorced parents, thus the reference to "spouse." We believe the court's point applies with equal force to unmarried parents; the quoted passage makes clear that the obligation springs not from marriage but from parenthood. As Planiol comments, "this obligation [child support] exists even outside of marriage and in favor of illegitimate children." 1 M. Planiol, Civil Law Treatise, pt. 2, No. 1681.
[2] Federal Rule of Civil Procedure 9(a) reads as follows:

Capacity. It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.
[3] The citation to Berghane is particularly pertinent, for, like the case before us, it dealt with a plaintiff's failure explicitly to declare representative capacity. For another case interpreting Rule 9(a) and holding that a plaintiff need not aver the capacity to sue, see Downs v. Department of Public Welfare, 368 F.Supp. 454 (E.D. Pa.1973).
[4] We reiterate that it was only the child's representative who had the right to sue and then only in that representative capacity.
[5] We note that the Supreme Court in Southern Shipbuilding relied on and endorsed the reasoning in Cacibauda which in turn rested on the repealed Article 253. Southern Shipbuilding, 372 So.2d at 1191.
[6] Compare Guidry v. Rubin, 425 So.2d 366 (La. App. 3d Cir.1982).